MATHEWS and others, *appellants, vs.* AIKIN, *respondent.*

The right of a surety to be subrogated, on payment of the debt, to the securities held by the creditor, does not depend upon contract, but rests upon principles of justice and equity.

A. owed a debt to B., who was indebted to C. At the request of B., and in pursuance of an arrangement between B. and C , A. executed a bond and mortgage for the amount of his debt, directly to C. The complainant D., on the solicitation of B., but without any request from the mortgagor, guarantied the payment of the bond. The holder of the bond and mortgage, who had also become the owner of the equity of redemption under a junior mortgage, sued D. upon his guaranty and compelled him to pay the debt. *Held,* on bill filed by D., that he was entitled by substitution to the benefit of the mortgage for his indemnity.

Where real estate is encumbered by two mortgages, and the holder of the junior one forecloses and purchases in the property, the presumption is that he bids to the value of the equity of redemption only; and the land becomes from thenceforth the primary fund for the payment of the debt secured by the senior mortgage.

APPEAL from the supreme court in equity. Abraham Aikin filed his bill in the court of chancery before the vice chancellor

of the seventh circuit, against John Mathews and Oliver Or-cutt, who appeared and defended, and against Edward Aikin, who suffered the bill to be taken as confessed. The case, so far as material to be stated, upon pleadings and proofs was as follows: On or before the 22d of November, 1837, Edward Aikin, who was the son of the complainant, executed to James Hasbrook a bond secured by mortgage on certain real estate, bearing date December 6, 1856, conditioned for the payment of $1300 in six equal annual instalments. At the time of the execution of the bond and mortgage, Edward Aikin was indebted to one Theodore Wood in the amount thereof, and Wood being also indebted to Hasbrook, procured the bond and mortgage to be executed directly to him. At the time or soon after the bond and mortgage were given, the complainant, at the solicitation of said Wood and Hasbrook, executed upon the bond a sealed guaranty of the payment thereof. There was no evidence that the complainant executed the guaranty at the desire or request of Edward Aikin, the mortgagor. Edward Aikin was examined as a witness for the complainant, and on cross-examination testified that *he advised his father not to sign the guaranty,* informing him that he was under no obligation to procure a guaranty.

On the 27th of August, 1841, the said Edward Aikin executed to the defendant John Mathews a mortgage upon the same premises, conditioned to pay the sum of $663.36. The mortgage to Hasbrook had been previously recorded, and Mathews had also actual notice of the existence thereof. On the 11th of February, 1843, Mathews having caused his mortgage to be foreclosed in chancery, purchased the premises at master's sale under the decree for the sum of $500, and procured the master's deed to himself. After such purchase, and on the 26th of April, 1843, the personal representatives of James Hasbrook (who had died) assigned the bond and mortgage first above mentioned to the defendant Oliver Orcutt. The consideration for this assignment was paid by Mathews, and such assignment was made in trust for him and for his benefit only. Immediately afterwards, Mathews caused an action at law to be

Mathews *v.* Aikin.

commenced, in the name of Hasbrook's representatives, against the complainant upon the aforesaid guaranty, and recovered judgment against him for the sum of $370.76, the amount of the last instalment due upon the bond and mortgage, the other instalments having been previously paid. The complainant thereupon tendered the amount recovered against him, and demanded that Orcutt assign the bond and mortgage to him. This was refused; and the complainant then paid absolutely the sum, and demanded an assignment. This was also refused. At the commencement of this suit, the defendant Mathews was in possession of the premises under his purchase at the master's sale above mentioned. Edward Aikin was insolvent. The complainant claimed by the bill to be subrogated to the rights of Orcutt or Mathews as the holder of the bond and mortgage for the purpose of reimbursing to himself the sum collected of him by suit on the guaranty; and the prayer of the bill was that such right of subrogation might be declared, and that the premises might be sold, &c.

The vice chancellor decreed in favor of the complainant according to the prayer of the bill. The defendants appealed to the chancellor, and the cause then became vested in the supreme court organized under the new constitution; and that court, sitting in the fifth district, affirmed the decree of the vice chancellor. The defendants appealed to this court.

*B. D. Noxon*, for the appellants. When a third person volunteers to guarantee the payment of a bond and mortgage after its execution and delivery, with or without a consideration passing to him from the holder, and especially when he so guarantees against the express desire and advice of the mortgagor and obligor, he cannot, by paying the amount secured by the bond and mortgage, make the mortgagor his debtor, and recover against him for money paid; nor does he, by such officious guarantee, acquire the character of a surety, so that, after payment by him of the demand, he can ask to be subrogated or substituted to all the rights and remedies of the mortgagee or holder of the mortgage. Such payment extinguishes the debt

and the security ; and the guarantor has no claim either at law or equity to be repaid. (*Com. on Cont.* 452; *id. ed. of* 1809, 151; *Child* v. *Morley,* 8 *T. R.* 613 ; *Exall* v. *Partridge, id.* 310 ; 3 *John.* 431; 10 *id.* 361 ; 14 *id.* 88 ; *Stor. Eq.* § 499 *b, and note* 3 *to p.* 477 ; *Copis* v. *Middleton,* 1 *Tur. & Russ.* 228 ; *Hodgson* v. *Shaw,* 3 *Mylne & Keene,* 190, 1, 2 ; *Sandford* v. *McLean,* 3 *Paige,* 122; *Fink* v. *Mashfy,* 8 *Watts,* 384; 4 *Barb. Eq. Dig.* 672, § 13.)

*Geo. F. Comstock,* for the respondent. The complainant as a mere surety is entitled to be substituted to all the rights of the holder of the bond and mortgage, for the purpose of enforcing the mortgage lien for the sum collected of him, in the same manner that the holder of the bond and mortgage might have done. (1 *Story's Eq.* §§ 327, 499, 501, 502 ; 1 *John. Ch.* 409 ; 4 *id.* 545 ; 2 *id.* 554; 6 *Paige,* 521 ; 10 *id.* 445.)

This right of substitution is not affected by the consideration urged on the other side, that Abraham Aikin did not execute the guaranty at the request of Edward Aikin. The right of substitution does not depend upon any express or implied contract between the principal and surety ; but it rests upon principles of equity wholly independent of contract. It results from the relation which the surety and the creditor hold to each other, and from the equitable obligation of the principal to pay the debt. (*Deering* v. *The Earl of Winchelsea,* 2 *B. & P.* 270 ; *Norton* v. *Coons,* 3 *Denio,* 130 ; *Story's Eq.* § 493 ; § 499 *and note; Hodgson* v. *Shaw,* 3 *Mylne & Keene,* 190, 1, 2, *per Ld. Brougham; Sir Samuel Romilly arguendo,* 14 *Ves.* 159 ; 2 *John. Ch. Rep.* 561, 562 ; 4 *id.* 130, 131, 132.) The following instances may also be put as illustrations of the doctrine that the right of substitution does not depend upon contract. (1.) A junior mortgagee who pays off a senior mortgage is entitled to be substituted. (4 *John. Ch.* 370 ; 2 *Cowen,* 118 ; 9 *id.* 409 ; 3 *Wend.* 412 ; 5 *Hill,* 280.) (2.) Where two parcels of real estate owned by different persons are covered by one mortgage, and one of the owners ought to pay it; if the other is obliged to pay it, he is entitled to be substituted to the lien.

Mathews *v.* Aikin.

(3.) A mortgagor who sells subject to the mortgage, and is obliged to pay by suit on the bond, is entitled to this right. (10 *Paige,* 595.) (4.) In the case of a vendor's lien, if the vendor resorts to the personal assets of a decedent, the creditors and legatees are entitled to take his place. (2 *Story's Eq.* 1227.) (5.) When one creditor has a lien on two funds, and another only on one; if the first creditor resorts to the fund on which the other has a lien, the latter takes his right in the other fund by substitution. (1 *Story's Eq.* 633, 637.)

It does not at all alter the case that the defendant Mathews has acquired title to the premises under a junior mortgage given to himself. Such a title is subject to the senior mortgage and to the right of the surety, who has paid the mortgage, to be subrogated. Mathews had also both actual and constructive notice of the senior mortgage, when he took his mortgage and when he purchased at the sale under it. Further; when Mathews purchased the equity of redemption under the junior mortgage, the premises became the *primary* fund for the payment of the debt, even as against Edward Aikin, the mortgagor, and when the bond and mortgage were afterwards purchased in by Mathews, and the assignment taken to Orcutt in *trust* for him, the debt became in equity *extinguished.* (7 *Paige,* 248; 2 *John. Ch.* 125; 10 *Paige,* 503, 249.)

JOHNSON, J. It is a general and well established principle of equity, that a surety, or a party who stands in the situation of a surety, is entitled to be subrogated to all the rights and remedies of the creditor whose debt he is compelled to pay, as to any fund, lien, or equity which the creditor had against any other person or property on account of such debt. The general doctrine, as a rule of equity, is not controverted on the part of the appellants, but is fully conceded. It is insisted, however, by their counsel, that the guarantor in this instance did not become such at the request of the debtor; that as to the debtor, he was a mere volunteer, having no remedy over against him, and never acquiring the character of a surety so as to be entitled to subrogation to the rights and remedies of the creditor.

The objection seems somewhat narrow and technical when addressed to a court of equity whose peculiar province is to mete out substantial justice where the more restricted powers of the common law fail in its administration. But it leads us to examine carefully into the grounds and principles upon which the right of subrogation rests. Does it rest upon the foundation of a contract binding in a court of law between the debtor and his surety? In other words; does it turn substantially upon the question whether or not the surety who has paid the debt to the creditor has a remedy over, on his contract, against the principal debtor for money paid in an action at law? or does it not rest rather upon the broader and deeper foundations of natural justice and moral obligation? Chancellor Kent says, in *Hays* v. *Ward*, (4 *John. Ch.* 130,) "This doctrine does not belong merely to the civil law system. It is equally a well settled principle in the English law that a surety will be entitled to every remedy which the principal debtor has, to enforce every security, and to stand in the place of the creditor, and have those securities transferred to him, and to avail himself of those securities against the debtor. This right stands not upon contract, but upon the same principle of natural justice upon which one surety is entitled to contribution against another." Lord Brougham, in *Hodgson* v. *Shaw*, (3 *Mylne & Keene*, 183,) said: "The rule here is undoubted, and is founded on the plainest principles of natural reason and justice, that the surety paying off a debt shall stand in the place of the creditor, and have all the rights which he has for the purpose of obtaining his reimbursement. It is scarcely possible to put this right of substitution too high; and the right results more from equity than from contract or *quasi* contract unless in so far as the known equity may be supposed to be imported into any transaction, and so to raise a contract by implication." Sir Samuel Romilly, in his argument in *Craythorne* v. *Swinborne*, (14 *Ves.* 159,) stated the rule to be, that "a surety will be entitled to every remedy which the creditor has against the principal debtor to enforce every security by all means of payment, to stand in the place of the creditor not only through the medium of contract but

Mathews *v.* Aikin.

even by means of securities entered into without the knowledge of the surety, having a right to have those securities transferred to him, though there was no stipulation for that, and to avail himself of all those securities against the debtor." And this exposition of the rule was fully sanctioned by Lord Eldon in giving judgment in that case. .

The equity is certainly as strong, and it seems to me somewhat stronger in favor of substitution, as against the creditor at least, than it is between sureties for contribution where one has paid the whole debt, and it has been likened to the case of contribution between sureties. As between them the rule in equity is clear that the ground of relief does not stand upon any notion of mutual contract express or implied, but arises from principles of equity independent of contract. *Story's Eq.* § 493, *and notes*, where the authorities are all collected. This is also substantially the rule in courts of law. (*Norton* v. *Coons*, 3 *Denio*, 130.) In that case the circumstances under which the defendant became co-surety were such as to repel the presumption of any promise to make contribution. But the court held that his being a surety on the same contract without qualification in terms was sufficient to fix his obligation to contribute, and that for the purposes of giving the plaintiffs a remedy the court would presume a promise. A promise was therefore imputed where none confessedly existed, in order to provide a remedy for the party where there was no doubt as to the legal liability; and the legal liability in such cases springs from the equitable obligation; the law courts having borrowed their jurisdiction in these particular cases from the courts of equity. In the present case it seems to me, if it were necessary, a court of equity ought to imply a promise on the part of the creditor to subrogate the surety to all his rights and remedies, in case he resorted to the latter for payment of the debt upon his guarantee. The equitable obligation resting upon him to do so seems to me most manifest.

It is true, the case shows that the principal debtor informed the guarantor that he was under no promise or obligation to give security, which seems to have been insisted upon by the

creditor, and that he advised his father not to give the guaranty. There is nothing, however, in the case to show that the debtor did not subsequently assent to it, even at the time the guaranty was executed, or that the money was not paid at his express request afterwards. But the case does show that the guaranty was executed at the repeated and urgent solicitations of Wood, the original creditor, and of Hasbrook, to whom Wood proposed to transfer the debt, and to whom, by arrangement between them, the bond and mortgage were executed. As to the creditor Mathews, therefore, who now stands in the place of Hasbrook, Abraham Aikin was not a voluntary surety for the debt of his son, but became so at his express request, or that of the mortgagee under whom he claims, and it seems to me, after Mathews has pursued Abraham Aikin to judgment and fixed his liability as surety for his son in a court of law, it does not lie with him to turn round and say he is a mere volunteer in assuming the obligation and paying the money, and therefore not entitled to the rights and privileges of a surety. The creditor should not be permitted in a court of equity to question the rights of the surety after the obligation has been incurred at his request, and he has fixed the character upon him by suit and judgment in a court of law. As to him at least, Aikin, the father, was surety for the debt of the son, and was compelled to pay that debt, or a portion of it; and it is immaterial as to the creditor what the state of the case is, or the legal rights are, as between the principal debtor and the surety. There is no reason why the creditor should set up a defence for the debtor. It is sufficient for him that he has received his debt of the surety to create the obligation on his part to surrender to the surety the securities in his hands. He is not to litigate the rights of the debtor, and set up defences for the latter which he, peradventure, might be too honest and conscientious to set up against the securities in the hands of a surety who had paid his debt for him.

It might be different if the debtor himself was here urging this defence, and especially if he was able to show that the surety entered into the obligation, not only against his wish or

Mathews *v.* Aikin.

request, but for some purpose of fraud or oppression, or to make him his debtor against his will, or, as suggested by the appellant's counsel, to compel him to pay a debt to which, as between him and the creditor, he had a good defence at law.  In such cases a court of equity would not lend the surety its aid, as he would not come before it with clean hands.  But this is no such case.  The principal debtor is here made a party, and suffers the bill to be taken as confessed against him.  He sets up no such defence, nor does he pretend that he is not liable, or that he is not under both a legal and a moral obligation to his surety to repay the money which the latter has advanced for him.  Indeed, he expressly swears that his father was a mere security for him for the payment of the bond, without receiving any consideration for becoming such surety.  It is true he also testifies that he advised his father not to sign the guaranty, but it is obvious to my mind that this was in reference to a claim made by the creditor upon the debtor, that he was under some obligation to give some additional security.  This appears to me quite evident from the appellant's answer and the course of the examination.  It is sufficient, however, as I apprehend, that the debtor sets up no defence of the kind, and, although a party, admits the validity of the respondent's claim and would not afterwards be heard to allege it was illegal or invalid.  Could the appellant Mathews be permitted to set up a defence so ungracious as against a surety whom he has compelled to pay his debt, he would be bound in order to make it complete to show, as I think, that the principal debtor resisted the surety's claim, and that the securities in the hands of the latter would be worth-less, inasmuch as he could never enforce them against such principal.  Otherwise the court would intend that the principal was willing to do what equity required him to perform.

But in addition to the general reasons against the creditor's resisting the claim of the surety to be subrogated, especially when the debtor makes no objection, there is I think in this case a particular reason why the appellant Mathews should not be heard to interpose such an objection.  The case shows that he held a junior mortgage upon the same premises which he took

with full knowledge of the existence of the present mortgage as an incumbrance upon the premises and subject to it; and that before he became the purchaser of the mortgage in question through Orcutt his trustee, he had foreclosed such junior mortgage and become himself the purchaser of the equity of redemption. At the time therefore that he became the assignee of the present mortgage he was the owner of the premises subject to this mortgage, and held them as a fund for the payment of this debt. (*McKinstry* v. *Curtis*, 10 *Paige*, 503; *Russel* v. *Allen*, *id*. 249; *Cox* v. *Wheeler*, 7 *id*. 248; *Tice* v. *Annin*, 2 *John. Ch*. 125.) It presents therefore the case of a creditor with the fund pledged for the payment of the debt in his hand, under circumstances which make it an equitable satisfaction of the debt, collecting the debt over again out of the surety, and then refusing to surrender the fund to him. The legal presumption is that Mathews, when he purchased the premises at the sale under his junior mortgage, only bid to the value of the equity of redemption, and he must be adjudged to hold them subsequently as a fund for the satisfaction of the prior incumbrance. And he might have been restrained in equity from proceeding to collect the debt afterwards from the mortgagor, or in case the latter had paid it, he would have been entitled to have the mortgage foreclosed upon the premises for his benefit—within the principle of the cases last above cited.

At the time Abraham Aikin was sued upon his guaranty he was ignorant that the assignment of the securities had been made to Orcutt as a mere trustee for Mathews, who was already the owner of the premises. And unless I greatly mistake the case, it exhibits strong marks of contrivance on the part of Mathews to discharge the premises from the incumbrance of the mortgage at the expense of Abraham Aikin. It seems to me quite clear, from the facts of this case, that the defence ought not to prevail.

But upon the general doctrine of subrogation, I agree fully with the learned judge who delivered the opinion of the supreme court, that the right of the surety to demand of the creditor whose debt he has paid, the securities he holds against the prin-

Mathews *v.* Aikin.

cipal debtor and to stand in his shoes, does not depend at all upon any request or contract on the part of the debtor with the surety, but grows rather out of the relations existing between the surety and the creditor, and is founded not upon any contract, express or implied, but springs from the most obvious principles of natural justice. And if it were true that the surety in such a case as this could maintain no action at law against his principal for the money paid, I agree with the supreme court that it would furnish a still stronger case for subrogation. A court of equity would never presume that the principal would interpose such a defence. If the creditor has insisted upon the surety's discharging his obligations and liabilities as such, and fastened the character upon him by a judgment, he cannot, after receiving from him his debt, turn round and deny him the rights of a surety. The creditor must then fulfil his obligation to the surety, and leave the latter and his principal to adjust or litigate their rights or claims as they may see fit. There is no hardship in this. The surety might have filed his bill and compelled Mathews to collect the debt out of his principal through the mortgage before resorting to him. And in such a proceeding Mathews might with the same propriety have set up as a defence that the surety was a mere volunteer and could have no redress against his principal, and ought not to insist upon his proceeding against the principal in the first instance. The injustice of the defence might be a little more apparent in that case, but none the more real. Had Abraham Aikin owned the mortgage and assigned it to Mathews or to his trustee with his guaranty upon it at his request, no one, I apprehend, would pretend that Aikin, upon payment on his guarantee, would not be entitled to have the mortgage again from the creditor. How is his equity weakened by the consideration that to enable Wood the mortgagee to sell it to Hasbrook he, at the request of both Hasbrook and Wood, became the guarantor ? It seems to me to be considerably strengthened by the fact that he derived no benefit from the transfer—especially as a doubt has been raised as to his remedy over at law for money paid against the mortgagor. If Hasbrook would have been bound to sur

render to Wood, had he been the guarantor and made payment, I do not see why he is not, to the representative of Aikin, who became guarantor for the benefit and at the request of both Wood and Hasbrook.

Decree affirmed.