ALVAH F. CROSBY, RESPONDENT, v. EDWARD G. CRAFTS AND OTHERS, APPELLANTS.

*Principal and surety — security given by principal to secure surety — right of creditor to enforce, though surety is discharged.*

Security — *e. g.*, a confession of judgment — given by the principal debtor to his surety, constitutes a *quasi* trust fund for the payment of the debt. When two persons bear to each other the relation of principal and surety, and to third parties that of joint debtors, and the surety's estate is discharged from liability for the debt by his decease, a judgment confessed by his principal to the surety remains a valid lien and security for the full amount of the creditor's claim.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee, in an action brought to set aside a judgment, on the ground that it was confessed to hinder, delay and defraud creditors, etc. The referee found that on December 5, 1865, the defendant Edward G. Crafts, through Lewis Seymour, his agent, made a loan of $600, in money of one Moses La Grange, for his own exclusive use, and as a security therefor made and delivered with one Ammi Doubleday, a promissory note in the words and figures following, viz.:

$600.                                    BINGHAMTON, *December* 5, 1865.

One day after date, for value received, I promise to pay to the order of Moses La Grange, six hundred dollars.

                                               E. G. CRAFTS.
{ 30 cents in Int. Rev.<br>stamps canceled. }     A. DOUBLEDAY, *as surety.*

That on the 3d day of February, 1866, the said Edward G. Crafts, through his said agent, made another and further loan of $1,600, in money of the said La Grange, for his own exclusive use, and as a security therefor made and delivered a promissory note, signed by himself and the said Ammi Doubleday, in the words and figures following, viz.:

$1,600.                                  BINGHAMTON, *February* 3, 1866.

Due Moses La Grange sixteen hundred dollars at the First National Bank of Binghamton.

                                               E. G. CRAFTS.
{ 80 cents in Int. Rev.<br>stamps canceled. }     A. DOUBLEDAY, *as surety.*

That Ammi Doubleday executed both of said notes as surety, and at the request and for the accommodation of said Crafts, and for no other purpose or consideration, and there was justly due upon them, December 26, 1866, $2,344.93.

That on December 27, 1866, a judgment by confession was entered in favor of Doubleday against said Crafts for $2,344.93, to secure the former against his liability arising from the execution of the notes above mentioned. The confession of judgment, through a mistake of the parties, recited that the notes for securing Doubleday, against the payment of which the judgment was confessed, had been made payable to David Morgan.

On September 27, 1866, one Hoadley recovered judgment for $2,202.74 against Edward G. Crafts, which judgment was, on May 1st, 1870, assigned to the plaintiff in this action, who also held, through assignment, a mortgage given April 28, 1865, by Edward G. Crafts and others on certain real estate, on the foreclosure of which mortgage there was a surplus of $3,573, which was, by order of the court, paid over to the defendant Matthews, as county treasurer of Broome county. Edward G. Crafts held the title to the property at the time of the foreclosure.

On November 3d, 1870, an execution was issued on the judgment recovered by Hoadley against Crafts, and was returned unsatisfied.

On July 23, 1867, Ammi Doubleday died, and Robert D. Doubleday, who was appointed his executor, for a valuable consideration sold the judgment above mentioned, confessed to Ammi Doubleday by Crafts, to Susan P. D. Crafts, upon receiving indemnity against all claims, etc., against the estate.

The interest on both notes to February 1, 1867, and $200 of the principal on the $600 note, were paid in March, 1868, and thereafter the residue remaining due on both said notes was paid in full. All payments made after March, 1868, were made for and by the procurement of Susan P. D. Crafts, who was one of the children and heirs at law of Ammi Doubleday.

On March 10, 1870, the defendant Susan P. D. Crafts made an assignment to William Harris, as collateral security to a mortgage, of the judgment confessed by Edward G. Crafts. At the time of the death of Ammi Doubleday, and up to the time of the referee's report, Edward G. Crafts was insolvent.

As conclusions of law, the referee found that the liability of Edward G. Crafts and Ammi Doubleday on the $1,600 note was a joint liability, and that on the death of Ammi Doubleday his estate was discharged from all liability therefor. That the judgment confessed to Doubleday by Crafts, by Doubleday's executor assigned to Susan P. D. Crafts, and by her to the defendant Harris, was a valid and subsisting lien to the amount of the $600 note and the costs included in the judgment, which sum, with interest, at the date of the report, amounted to $876.23, and that plaintiff was entitled to judgment, declaring the said judgment, so confessed, to be void and of no effect, except as to the sum of $876.23.

*Edward K. Clark,* for the appellants.

*Reuben H. Root,* for the respondent.

LEARNED, P. J. :

It is not disputed that Doubleday was, in fact, surety for Crafts on the due bill of $1,600, or that the confession of judgment was given by Crafts to Doubleday, among other things, to secure him against his liability on this note. La Grange was the creditor who held the note. And the referee has found that it was by a mistake of the parties that the confession was given to David Morgan, to whom the parties thought the due bill was payable, and that this mistake does not vitiate the judgment.

We have then the case of creditor, principal and surety, where the principal has given the surety a security against his liability. In such a case the principal, by a well settled and most just rule of equity, is entitled to the benefit of the security. ( *Vail* v. *Foster,* 4 N. Y., 312; *Pratt* v. *Adams,* 7 Paige, 627; *Ten Eyck* v. *Holmes,* 3 Sandf. Ch., 428; *Curtis* v. *Tyler,* 9 Paige, 432.)

But it may be said that the confession of judgment was only to reimburse Doubleday, in case he should pay the debt, and that as he and his estate were discharged by his death from liability on the joint obligation of himself and Crafts, the judgment had, after that time, no validity as to the due bill of $1,600. Admitting, for the purpose of the argument, that Doubleday was a joint debtor with Crafts, and that, as Crafts survived him, his estate was not liable, still this admission does not affect the equitable principle above stated.

The ground of that principle is, that the security given by the principal debtor to the surety is a *quasi* trust fund for the payment of the debt; that the principal debtor has appropriated it for the security of the debt, and that the creditor has an equitable right to have it thus applied. ( *Vail* v. *Foster*, *ut supra*.)   That case illustrates this view.   The surety had become insolvent.   But he held a bond and mortgage, executed by the principal debtor to indemnify him for his liability.   As he was insolvent and could not pay, he could not practically be damnified by reason of his debt.   And as to him the creditor was in the same condition as if the surety had been discharged by death, instead of insolvency.   But although the creditor could not, in fact, collect any thing out of the surety, and although for this reason the surety had never been damnified by his obligation, yet it was held that the creditor was entitled to have the benefit of the securities which had been executed to the surety for his indemnity.

Now, in the present case, Crafts, the principal debtor, was insolvent; Doubleday the surety had died; and thereby, as it is claimed, his estate was discharged from this alleged joint obligation; but La Grange, the creditor, had an equitable right, in order to collect his debt, to enforce this judgment confessed to Doubleday.   Of course it would follow that any one, other than Crafts, the principal debtor, might pay the debt to La Grange and take an assignment of it, which would carry the equitable right to the judgment confessed to Doubleday.   And such person then might require Doubleday's executors to assign that judgment to him, and might enforce it.   This is what Susan P. D. Crafts practically did.   She took an assignment of the judgment from Doubleday's executors, and agreed to indemnify his estate from liability on this claim, and on others similar.   Subsequently she paid the note to La Grange.   Now, if Doubleday's estate was legally liable for this note, then, of course, there is no doubt that the judgment confessed is still valid for the amount thereof.   But if, as the plaintiff claims, Doubleday's estate was not liable, then Susan P. D. Crafts was not liable, in any way, on the note, even as one of the heirs of Doubleday.   Her payment of the note to La Grange, therefore, entitled her to have from him the equitable right which he had in the judgment confessed, and thereby to require the executors of Doubleday to

assign the judgment to her. This they had already done, and this assignment inured to her benefit when she paid the debt to La Grange. Or, to state this in another way, after the judgment had been assigned to Susan P. D. Crafts, could not La Grange have asserted against her his equitable right to collect his debt by means of this judgment? If she had thus been required to pay the debt in order to retain the judgment, she would have been plainly entitled to enforce the judgment, which had been specifically appropriated to the payment of the debt. (See *Mathews* v. *Aikin*, 1 N. Y., 595.)

The equitable principle may be illustrated in another way. Suppose Crafts had confessed a judgment to La Grange to secure this note. Then, undoubtedly, La Grange could have enforced the judgment, whether or not Doubleday's estate was discharged by his death. If Susan P. D. Crafts, not being the debtor, had paid La Grange the debt, he could have assigned the judgment to her, and she would have held it. Now, where security is placed by the principal debtor in the hands of the surety or in the hands of the creditor, it is, in equity, treated as security for the debt. The equitable rights of the parties therein are administered upon the doctrine that it is a fund which has been appropriated by the principal, and is to be applied to the payment of the creditor and the discharge of the surety. Nor can it be claimed justly that Susan P. D. Crafts was a mere volunteer. She paid in consideration of the assignment of the judgment to her. She thus obtained the legal title to the security from the executors of Doubleday, and obtained the equitable title by taking up the note. Where the nature of the whole transaction is so plain, it is immaterial which she procured first, the legal or the equitable title to the judgment. Her assignment to Harris, therefore, gave him title to the judgment to its full extent, except the interest on the notes to February 1, 1867, paid by Crafts himself.

The judgment, therefore, should be reversed, and judgment should be rendered for the defendants, with costs.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

Judgment reversed, and judgment rendered for defendants, with costs.