SHEPPARD *v.* CONLEY *et al.*

*(Supreme Court, Special Term, Yates County.* December, 1889.)

PRINCIPAL AND SURETY—PROTECTION OF SURETY—COLLATERAL SECURITY.

 Plaintiff was assignee of a bond executed by defendant as surety for her husband, the principal obligor, which was secured by a first mortgage of the husband's land. The plaintiff was also the holder of a second mortgage of the same land. The husband was insolvent. *Held,* that plaintiff would be required to exhaust his security under the mortgage before enforcing defendant's liability on the bond, and an action theretofore brought on the bond would be suspended until proceedings were had on the mortgage.

Action by Morris F. Sheppard against Hannah Conley and another on a bond.

 *William T. Morris,* for plaintiff. *Briggs & Baker,* for defendant Hannah Conley.

 ADAMS, J. This is an action upon a bond executed by the defendants, and conditioned for the payment of the sum of $1,600. So far as the instrument itself is concerned, there is nothing to indicate that it was not executed by both the obligors therein named as principals, but parol evidence is furnished by the defendant which shows most satisfactorily that she signed the same, not as a principal, but simply as surety for her husband, who is the principal debtor. It is now well settled in this state that parol evidence is competent for this purpose, (*Hubbard* v. *Gurney,* 64 N. Y. 457; *Easterly* v. *Barber,* 66 N. Y. 433;) and, inasmuch as no attempt is made to contradict the evidence of James Conley upon this subject, it must be assumed that he and his wife sustain to each other the relation of principal and surety. It further appears by uncontradicted evidence that this relationship was known to the plaintiff before issue was joined in this action, and he thereby became bound to respect the same, and all the equities growing out thereof. *Grow* v. *Garlock,* 97 N. Y. 81. Other uncontroverted facts, which are material to the principal question raised upon the trial of this action, may be briefly stated as follows, viz.: At the time of the execution of the bond in suit, there was also executed, as collateral thereto, a mortgage upon certain real estate, consisting of about 75 acres of land in the town of Potter, Yates county, which mortgage is owned by the plaintiff, who is likewise the owner of a second mortgage upon the same premises, upon which there is now due, of principal and interest, the sum of about $1,500. The mortgaged premises are a slender security for the payment of both securities; and, the mortgagor being insolvent, there is great danger that the defendant will be left remediless, if compelled to pay the bond in suit, and thus subordinated to the rights of prior incumbrancers. Upon the commencement of this action, plaintiff was requested by the defendant to enforce the mortgage which he held as security for the bond in suit, and was assured at the same time that defendant would pay the costs already incurred in this action, as well as any deficiency which might arise upon the sale of the mortgaged premises. This request was denied, and the question is therefore fairly presented as to whether, in view of the facts of the case, the plaintiff can be compelled to take such action as is required of him for the protection of defendant's interest. It may be observed, as prefatory to a consideration of this question, that, although this is an action at law, the defense interposed is of an equitable nature, and the defendant is therefore entitled to invoke the application of equitable principles in her behalf. *Richardson* v. *Davidson,* 5 N. Y. Supp. 617.

 Starting, therefore, with this premise, that the relation of principal and surety does exist as between the defendant and her husband, there is scarcely any limit to the extent to which courts of law, as well as of equity, will go in their efforts to protect the interests of the latter, where it can be done without prejudice to the creditor's right to have his debt paid. The very nature of the relationship demands that this should be the rule, for, as was re-

marked by SPENCER, C. J., in an early case, "whatever may be the form of the instrument by which the principal and surety become bound, it was never the intention of the parties that the surety should, in the first instance, pay the debt, * * * and it would be a very inconvenient and rigid rule which should require the surety to pay the debt before he had any remedy against the principal by means of the security which the creditor holds." *King* v. *Baldwin*, 17 Johns. 384, 395. Within the principle thus broadly stated it has been frequently held that it is inequitable and unjust for the creditor to delay the collection of his claim against the principal, or to do any other act which will tend to impair the security of the surety, and that to prevent such a result a creditor may, after a debt has matured, be coerced by the surety into collecting his demand of the principal. *King* v. *Baldwin*, *supra; Remsen* v. *Beekman*, 25 N. Y. 552; *Colgrove* v. *Tallman*, 67 N. Y. 95. It is likewise a well-settled rule of law and equity that a surety, by paying the debt of the principal, may be subrogated to every right which pertained to the creditor, (*Mathews* v. *Aikin*, 1 N. Y. 595;) but, if that course were adopted by the defendant in this case, she would doubtless be obliged to combat the claim that the payment of the principal debt released the land from the lien of the mortgage which was collateral to the debt, and thus plaintiff's second mortgage would become the first lien thereon. It is unnecessary to consider whether any such claim as this could be successfully maintained, because, within the clearest principle of equity and good conscience, the plaintiff, upon being properly indemnified against all loss and expense, should be required to exhaust his remedy against the principal property which was primarily pledged to pay this claim before resorting to his right of action against the surety. This course would result in securing to the creditor the payment of his debt. It would not impair the security of his second mortgage; and when, as assignee, he became owner of the bond in suit, he was bound to know that he took it subject to all existing equities. *Bush* v. *Lathrop*, 22 N. Y. 535. And, furthermore, it would save the defendant from paying a debt which it "was never the intention of the parties" she should pay in the first instance. It would seem, therefore, that the defendant's contention is founded in principle, and it likewise appears to be supported by authority. *Gary* v. *Cannon*, 3 Ired. Eq. 64; *Wright* v. *Austin*, 56 Barb. 16. The case last cited is directly in point, and an examination of more recent authorities fails to disclose any modification of the doctrine there advanced, save that of *Bank* v. *Wood*, 71 N. Y. 405, which was the case of an accommodation indorser of commercial paper, where, of course, a different rule would obtain, although it is there intimated that the surety might have been entitled to the enforcement of the rule contended for if he had offered to pay the expenses which would have attended such a course of procedure.

It follows, if my view of the law of this case is correct, that the plaintiff is not entitled to judgment in this action. But, on the other hand, the defendant is not entitled to a dismissal of the complaint; and, in order to protect the rights of both parties, it is directed that further proceedings in the action be suspended until the plaintiff takes measures to collect his claim by a foreclosure of the mortgage which was given to secure the bond in suit. Upon the foreclosure of that mortgage, if the moneys which are realized from the sale of the premises covered thereby are insufficient to pay the mortgage debt, interest, and costs, then this action may proceed to judgment for deficiency, or, if there is no deficiency, then for the costs incurred up to the time issue was joined, in the event defendant does not pay the same upon reasonable request so to do.