ROBERT E. WESTCOTT, Respondent, *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant.

*Action on an indemnity bond given in connection with a building loan mortgage — the amount of a deficiency judgment in an action to foreclose the mortgage is the measure of damages, although there has been a breach of the building loan contract.*

Robert E. Westcott conveyed certain premises owned by him to one Talbot, a contractor and builder, taking back a purchase-money mortgage for the entire amount of the purchase price. At the same time Talbot entered into a contract with Westcott for the erection of a building upon the premises and delivered to Westcott a building-loan mortgage, which provided that Westcott should make advances as the work progressed and that the building-loan mortgage should be a lien for so much only as had been actually advanced. Talbot also agreed to complete the building within a specified time and to furnish a bond in the penalty of $15,000 guaranteeing the erection and completion of the building.

The bond delivered pursuant to this agreement described Westcott as the owner of the premises and was conditioned as follows: "that if the said principal

shall well, truly and faithfully comply with all of the terms, covenants and conditions of said contract on his part to be kept and performed, according to the tenor of this contract, then this obligation to be null and void, otherwise to be and remain in full force and virtue in law."

During the progress of the erection of the building Talbot conveyed the premises and assigned the contract to one Johnson and the bond was continued as to the latter. Johnson failed to finish the building and Westcott commenced an action to foreclose the building-money mortgage. At the sale, which was made subject to the purchase-money mortgage, Westcott bought in the premises at such a sum that a deficiency judgment was entered for $2,348.87.

After purchasing the premises, Westcott completed the building according to the terms of the contract, at a cost in excess of the penalty mentioned in the bond.

*Held*, that the only interest of Westcott which was protected by the bond was his interest as mortgagee;

That Westcott having purchased the premises at the foreclosure sale subject to the purchase-money mortgage, it would be presumed that the land was worth the amount of the purchase-money mortgage in addition to the amount of his bid.

That, therefore, the only loss suffered by Westcott as mortgagee was represented by the deficiency judgment, and that the amount of such judgment constituted the extent to which the bond was enforcible.

APPEAL by the defendant, the Fidelity and Deposit Company of Maryland, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of May, 1903, upon the decision of the court rendered after a trial at the New York Trial Term, a jury having been waived.

*Albert B. Boardman,* for the appellant.

*E. H. Benn,* for the respondent.

HATCH, J.:

The action was brought to recover the penalty of a bond given by the defendant in the sum of $15,000. Prior to November 10, 1898, the plaintiff was the owner of certain premises located on Riverside drive, between Ninety-fourth and Ninety-fifth streets, in the city of New York. Talbot, a contractor and builder, purchased the premises for the sum of $55,000, and gave a purchase-money mortgage thereon for the full amount of the purchase price. At the same time Talbot entered into a contract with plaintiff for the erection of a building upon the premises, and for the purpose of securing a building loan from the plaintiff executed and delivered to him a

building-loan mortgage, providing that the plaintiff should make advances of money as the work progressed, and that the building mortgage should be a lien for so much only as had actually been advanced. Talbot agreed to complete the building within a specified time, and to furnish a bond of the defendant in the penalty of $15,000, guaranteeing the erection and completion of the building. Both mortgages and defendant's bond were delivered to the plaintiff on the same day. The bond contained the following provision :

" WHEREAS, said principal has entered into a certain written contract, bearing even date herewith, by which he undertakes and agrees to erect for said owner a seven-story apartment house on the premises mentioned and described in said contract, to the provisions of the last paragraph of which said contract reference is hereby particularly made, as a part hereof, to the same effect as if said paragraph was herein incorporated in full;

" *Now, therefore,* the condition of the foregoing obligation is such that if the said principal shall well, truly and faithfully comply with all of the terms, covenants and conditions of said contract on his part to be kept and performed, according to the tenor of this contract, then this obligation to be null and void, otherwise to be and remain in full force and virtue in law."

After working upon the building for a year, Talbot conveyed the premises and assigned the contract to one Johnson, with the consent of the defendant, who continued the force and obligations of its bond the same with Johnson as with Talbot. Johnson failed to finish the building and left it in an unfinished condition. The plaintiff advanced upon the building loan $57,000 under the building contract. On March 9, 1900, plaintiff commenced a foreclosure of the $60,000 mortgage and obtained a judgment of foreclosure and sale, under which the property was sold and bid in upon such sale by the plaintiff for the sum of $59,000 subject to the $55,000 mortgage. A deficiency judgment was entered for $2,348.87. Plaintiff thereupon completed the building according to the terms of the contract at a cost which the defendant admits exceeded the penalty of the bond, and thereupon brought this action against the defendant to recover the amount of the penalty as provided in the bond. After the commencement of the action defendant made an offer of judgment exceeding the amount of the deficiency judgment, together

with interest and costs to the date of the offer. This the plaintiff refused. Upon a trial the court awarded judgment against the defendant for the full amount of the bond, together with interest thereon from the date of the finishing of the building by the plaintiff, and from the judgment so entered this appeal is taken.

It was the evident intention of the plaintiff in exacting the bond to furnish additional security for the payment of his mortgages. Such was his sole interest; therefore, there could be no other legal purpose to accomplish. The bond, it is true, speaks of the plaintiff as owner, but as he had conveyed the title to Talbot and taken back the purchase-money mortgage to secure his advances under the contract, it is evident that his only interest when the bond was given was that of mortgagee. This being the only interest which the plaintiff had, it was necessarily the only interest protected by the bond. If the mortgages were paid in full, the plaintiff would have no further interest in the property and could not enforce the bond for any amount even though the building was not completed, and this for the reason that having received payment to the full extent of every interest which he possessed, he could suffer no damage and run no risk of loss. When paid, there remained nothing to which the indemnity could apply. The purpose of the bond in the present case is the same as was the bond which we considered in *Sachs* v. *American Surety Co.* (72 App. Div. 60). Therein it was held to be a bond of indemnity to furnish security for the payment of whatever interest the obligee was entitled to receive. When the interest ceases, the suretyship ends. We come, therefore, to consider what, if any, is the present interest of the plaintiff which requires protection, and to which the indemnity bond applies. This involves the legal effect of the plaintiff's acts. By purchasing the property at the sale, he united the two estates or interests held by him. At law such union operated inevitably as a merger of the lesser in the greater estate. (*Smith* v. *Roberts*, 91 N. Y. 470.) Where the intent is not to merge, or justice requires that the separate estates remain intact, equity will interpose to prevent such result. Where there is no evidence of such intention furnished by the proofs and no just reason appears to thwart the merger, the lesser estate will be swallowed up in the greater. (*Hull* v. *Cronk*, 55 App. Div. 83.) There is nothing made to appear in the present case showing any intention

upon the part of the plaintiff to keep the two estates alive. On the contrary, the plaintiff assumed to exercise dominion over the property by taking possession and completing the building and has taken no steps to enforce any rights under the first mortgage.

It is not necessary that we determine whether the transaction in the present case operated as a merger or not, for it will be presumed, in the absence of proof as to the value of the land, that the plaintiff bid upon the sale under the junior mortgage the value of the equity of redemption under the lien of the first mortgage, and the land then became the primary fund for the payment of the prior mortgage. (*McKinstry* v. *Curtis,* 10 Paige, 503; *Clift* v. *White,* 12 N. Y. 519, 533.) As between the mortgagor and the owner under such sale, equity will restrain the owner from proceeding to collect the first mortgage out of the mortgagor, and if he did the latter would become entitled to have the mortgage upon the premises foreclosed for his benefit. (*Mathews* v. *Aikin,* 1 N. Y. 595.) Under the proof in the present case the land is to be regarded as of sufficient value to pay the lien of the mortgage, as the bid represents the value of the equity of redemption after such mortgage is paid; consequently, the presumption is that the mortgages were paid and discharged when the mortgagee bid in the premises under the junior mortgage. In addition to this the purchase price was evidence of the value of the land. (*Matter of Johnston,* 144 N. Y. 563.) Such price was $55,000; the plaintiff advanced upon the building loan in cash $57,000. This, together with the work and labor expended in construction, was thought by the plaintiff to be worth the amount of his bid of $59,000. If the property was worth these sums it is quite clear that the plaintiff would not be permitted after he had elected to take title to enforce the purchase-money mortgage against the mortgagor. (*Belleville Savings Bank* v. *Reis,* 136 Ill. 242.) There it was said: "The purchaser is presumed to have bought the land at its value less the amount of indebtedness secured thereon, and equity will not permit him to hold the land and still collect the debt from the mortgagor." The bond, as we have observed, provides for indemnity, and if the debt cannot be enforced against the principal debtor, it certainly follows that it cannot be against the surety. The interest of the plaintiff was to have his mortgages paid. He had no other. He did not become entitled to receive the profit

which might have been made by Talbot, had he completed the contract, and had no interest therein except as the same furnished security for the payment of his mortgages. Suppose Talbot had made no attempt to perform the contract by the erection of the buildings, and had paid the mortgages, principal and interest, in full to the plaintiff, could it be for a moment claimed that he would have a cause of action in addition thereto for the full amount of the penalty of the bond? It is to be borne in mind that the defendant, if it be compelled to pay the amount of the bond, has a remedy over against Talbot or his assignee or both; and if judgment pass against it it may collect the amount thereof from the principal debtor. The mortgages being paid the plaintiff could enforce nothing against the mortgagor or his assigns, yet liability against them would arise the moment the bond is enforced, and to the extent of $15,000 the mortgagor or assigns may be made liable, although there is no indebtedness or liability existing against them in favor of the mortgagee. Such liability may not be created by indirection any more than it could be in an action between the mortgagor and mortgagee. The only difference in the present case is the method by which the mortgages were paid, but that is not material, for when the plaintiff elected to take the property as purchaser, he became chargeable with the value of the land and was bound to apply it upon his mortgage indebtedness. As the property was worth the amount of the purchase-money mortgage and the amount of plaintiff's bid at the sale it operated as payment to that extent. Making the application of these sums upon the mortgages it is found that the amount needed to indemnify the plaintiff for his entire interest is the amount of the deficiency judgment and for this sum the defendant offered to permit judgment to be taken. The court below decided the case in favor of the plaintiff upon the authority of *Kidd* v. *McCormick* (83 N. Y. 391). An examination of that case, however, shows that it is not controlling. While there were present in that case some facts quite similar to those in the present, yet it clearly appeared that the property was not of a value sufficient to pay the amount of the plaintiff's incumbrances and advances, and it was, therefore, held that he could resort to a trust fund which had been provided for his indemnity. The same rule was applied in that case which we apply here, viz., that the

bond indemnifies against loss and damage which flows from a breach of the principal contract. In the *Kidd* case the amount of loss was greater than the indemnity fund which was provided; consequently, it was held that the plaintiff was entitled to the extent of the fund to have the loss made good. We now so hold as applied to this plaintiff. The difference is in the facts. In the present case the loss is fixed at a sum less than the penalty of the bond and to that extent we enforce it. In the *Kidd* case the loss was greater than the indemnity fund, so the whole was awarded. In *Sachs* v. *American Surety Co.* (*supra*) the loss was greater than the penalty of the bond and we enforced it for the full amount. These cases are in harmony with our present views, the indemnity in both cases being enforced upon precisely the same principles. The court also fell into error in awarding interest, for the reasons assigned in *Sachs* v. *American Surety Co.* (*supra*).

If these views are sound, it follows that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

Van Brunt, P. J., Patterson, O'Brien and Ingraham, JJ., concurred.

Judgment reversed and new trial granted, with costs to appellant to abide event.