GRAND UNION TEA COMPANY, Plaintiff, v. JOHN N. POTTER and CHARLES H. MASON, Defendants.

(Supreme Court, Monroe Special Term, August, 1917.)

Sureties — when released — contracts — default.

> A surety without notice will be released from his obligation to meet a deficiency under a contract of employment to sell and deliver merchandise where the contract without his knowledge has been modified in a substantial respect, or where it has been terminated and subsequently renewed without the consent of the surety and the default occurred during the renewal period.

ACTION to recover for a default under an employment contract.

The defendant John N. Potter entered into an employment contract with the plaintiff, the Grand Union Tea Company, and the defendant Charles H. Mason became the surety on a bond guaranteeing the faithful performance of the contract. The contract contained the following clause: " It is understood and agreed that second party shall solicit orders for merchandise at prices and premium rates fixed by first party and in such manner as first party may designate, and enter upon cards or books furnished by first party, the names and addresses of the customers and the goods ordered by each, that first party will thereupon, in due course, deliver the merchandise, premiums and premium checks so ordered, to second party, who shall thereupon, in due course, deliver the same to the customers for cash and in no other manner, and that he will within ten (10) days after each delivery to him of such merchandise, premiums and premium checks and also on the last day of each month pay first party for all merchandise delivered by him less

the compensation to which he is entitled and account for all merchandise not delivered by him and all premiums and premium checks received by him.''

The bond signed by the defendant Mason provided that '' In case of a default of said Potter for thirty days written notice thereof is to be given said Mason thereof.''

Defendant Potter did not account as provided in his contract. He reported the amount of all goods on hand but did not send in the cash for all the goods which had been sold. The deficiency however was wiped out on the books of the plaintiff from moneys which he paid in the following month and it is claimed that his default was thereby avoided and notice to the defendant Mason was rendered unnecessary. There was also a period of a week when he was employed by some one else and then returned to the employment of the plaintiff. This interruption in his employment it is claimed operated as a release of the surety from any default occurring subsequently. It was also claimed that he had been permitted to retain funds which under the contract he was required to turn over to the company thus modifying the contract.

Edward Lynn, for plaintiff.

Carnahan, Adams, Jameson & Pierce (George A. Carnahan of counsel), for defendant Mason.

RODENBECK, J. The defendant Mason is not liable. The contract, the performance of which he guaranteed, was not observed by the parties to it. Such a contract must be strictly performed to hold the surety. The parties may modify it and bind themselves but they thereby release the surety. In this instance the defendant Potter was permitted to withhold funds or

extend credit to his customers and credit was extended to him by the plaintiff, all of which were contrary to the terms of the contract. He was to sell for cash and was to account within ten days of the delivery of merchandise to him and at the end of the month for all merchandise delivered by him. Had these provisions been observed the defaults sued on would not have occurred. Instead of requiring their performance the plaintiff permitted Potter to withhold funds or sell on credit and did not require payment by him in cash but extended credit to him. By so doing it modified the contract guaranteed and substituted a new contract under which the defendant Mason was not obligated. This modification occurred in May, 1914, and operated to cause the default sued on which it is claimed occurred in August, 1915, one year and three months thereafter. But prior to May, the time when the first default occurred, the plaintiff and Potter had terminated their contract and Mason's obligations came to an end. His suretyship could not be renewed thereafter without his consent. The employment of Potter for a week elsewhere operated to terminate his contract with plaintiff and relieved Mason from further liability on his bond. After this termination the plaintiff and Potter renewed their contract upon the same terms and thereafter the default occurred. At the end of May, 1914, he failed to pay for goods sold and delivered to the amount of $67.63. He was then in default having either extended credit to customers to that amount or having appropriated that much money belonging to plaintiff. In order to hold his surety plaintiff should have required him to meet the deficiency at once and in default of so doing for thirty days it should have given written notice to Mason. It did neither, but shipped goods

to Potter in June and applied his payments that month on the deficiency of the preceding month. This it had no right to do. It did not so stipulate in the contract and, while such a course might be proper as between the plaintiff and Potter, it could not be taken without Mason's consent and bind him. Each month's business stands by itself under the contract and payments for merchandise shipped to Potter in June could not be applied to make up a deficiency in May. That payments for June shipments were so used is shown by the fact that the deliveries to him in June amounted to $239.62 and the payments to $215.47 so that payments for merchandise delivered to him in June must have been applied to the May shortage. It is evident that within thirty days after Potter's default at the end of May he did not make good his default by payments independent of those due on the June account. Potter should have been required in June not only to account for all sales and deliveries during the month of June but to pay the deficiency of May of $67.63 beside, and if he did not so do Mason should have been notified. The failure to so notify him relieves him from any obligation for the alleged deficiency in August, 1915. This method of doing business was continued under the contract and the defaults of Potter amounting in 1914 for June to $40.09; August, $14.23; September, $25.98; October, $38.26; November, $78.67; December, $70; in 1915 for January, $95.57; February, $121.94; March, $133.67; April, $132.03; May, $139.10; June, $164.17; July, $213.40 and August, $229.75 were all covered up and were not called to Mason's attention until August, 1915, when he was notified of the default for the first time. That the alleged deficiency of $232.55 for August was not in fact for that month is shown by

the ledger account which charged Potter with a deficiency for July of $213.40 and shows that $159.96 worth of goods were delivered to him in August while he paid $205.39 during that month.  Parties to a contract cannot modify it in this manner and manipulate their accounts and hold a surety on the original contract.    They must exercise the utmost good faith toward the surety and strictly observe their contract with each other and with him or he will be relieved. The suretyship is for a particular contract and if that is not observed, but another substituted in its place, the surety is relieved.   A surety therefore without notice will be released from his obligation to meet a deficiency under a contract of employment to sell and deliver merchandise where the contract has been modified without his knowledge in a substantial manner affecting the deficiency by permitting the employee to withhold funds which the contract required him to pay over at stated periods, where credit has been extended to the employee where cash payments were required under the contract and where the contract had been terminated and subsequently renewed without the consent of the surety and the default occurred during the renewal period.   *Westcott* v. *Fidelity & Deposit Co.,* 87 App. Div. 497; *Gamble* v. *Cuneo,* 21 id. 413; *De Camp* v. *Bullard,* 22 Misc. Rep. 441; *Walsh* v. *Bailee,* 10 Johns. 180; *Moore* v. *Cockcroft,* 4 Duer, 133; *Miller* v. *Herlich,* 5 N. Y. St. Repr. 909; *Schuyler* v. *Englert,* 62 How. Pr. 479; 32 Cyc. 73, 109; 39 id. 679.

Ordered accordingly.