GEORGE W. KIDD, Respondent, v. THOMAS McCORMICK et al., Appellants.

Plaintiff and defendants McC. entered into a contract by which the former agreed to convey to the latter seven lots, they giving back their bond and a mortgage on each lot for the purchase-money. The vendees agreed to erect a dwelling upon each lot, plaintiff making to them certain advances as the work progressed, to be repaid out of the proceeds of mortgages upon the lots. After the papers were executed and the work of building commenced, the vendees negotiated a loan of defendant G., secured by mortgages upon four of the lots, and an agreement was made between all the parties, to the effect, among other things, that a certain portion of the moneys loaned should be deposited in a trust company " as collateral security for the completion of the dwelling-houses," and that said mortgages should have the priority over plaintiff's mortgages on said lots. The vendees failed to perform their agreement, and after the expiration of the time fixed for performance, abandoned the premises ; whereupon plaintiff went on and completed the buildings. In an action to reach the trust funds, *held*, that plaintiff's damages were the difference between the value of the premises as they were when abandoned by the vendees, and what their value would have been had the buildings then been completed according to the contract ; and that he was entitled to have out of the trust fund the amount of the damages so estimated. Plaintiff, before bringing this action, foreclosed his mortgages, bidding in

the premises and obtaining judgments for deficiencies. *Held*, that neither the taking possession and completing the buildings, nor the foreclosures worked a rescission of the contract on the part of plaintiff; also that a reservation of said contract in the foreclosure judgments was not necessary.

Also, *held*, that plaintiff was entitled to recover for expenditures made after the foreclosure sales in completing the buildings.

(Argued December 10, 1880; decided January 18, 1881.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made December 1, 1879, affirming judgment in favor of plaintiff, entered upon a report of the referee.

This action was brought by plaintiff to reach a trust fund deposited with the Union Trust Company of New York.

On the 29th of January, 1877, plaintiff entered into a building contract with the defendants, Thomas and John McCormick, by which it was agreed that plaintiff should sell and convey to John McCormick seven certain lots of land for $2,425 each, and on each of which said John McCormick was to give back in payment for the same a bond and mortgage for that amount. The McCormicks agreed to erect a house of a certain pattern on each lot, each to be completed July 1, 1877. Plaintiff agreed to aid in the erection of these houses by making certain temporary loans, to be repaid him when the houses had reached certain stages toward completion, plaintiff agreeing upon such repayment to allow liens on each of the lots to amounts specified, the same to have precedence over his mortgages.

In pursuance of this agreement the land was conveyed to John McCormick, and bonds and mortgages for the purchase-money taken back by plaintiff. The McCormicks proceeded with the erection of the houses, plaintiff making the temporary loans called for in the agreement.

On or about May 23, 1877, the McCormicks procured a loan from defendants Charles B. and George H. Granniss of $10,000, secured by mortgages of $2,500 each on four of the lots, plaintiff having executed an instrument giving said mortgages priority over his purchase-money mortgages. It was agreed between the parties that $6,000 of the said

loan should be deposited in the Union Trust Company of New York, subject to the joint order of plaintiff and the Grannisses. Of this deposit $3,000 was to be drawn out and paid to plaintiff when the work of building had progressed to a point specified, and the balance to be so drawn out when the buildings were completed ready for occupation. The money was deposited as agreed. The McCormicks proceeded with the work, and on July 6 the $3,000 was drawn out and paid to plaintiff, out of which he repaid himself his advances, and paid the balance on the McCormicks'·order. He also made further advances and accepted an order drawn on him by the McCormicks. The McCormicks proceeded with the work until about September 1, 1877, when, as the referee found, without any just cause therefor, and in violation of said contract, they abandoned the same in an unfinished condition, and declared to the plaintiff that they would not complete them. He also found that the four houses mortgaged to the Grannisses were worth, when abandoned, $2,250 less than if finished. On or about October 18, 1877, the plaintiff commenced actions to foreclose his mortgages, and on the 2d day of February, 1878, duly recovered therein judgments of foreclosure and sale, and for deficiency against John McCormick; and on the 7th day of March, 1878, each of said seven houses were sold pursuant to said judgments, and purchased by, and conveyed to the plaintiff at a price which left a deficiency. As conclusions of law the referee found that plaintiff was entitled first out of the fund to said sum of $2,250, with interest from·September 1, 1877, to be applied in reduction of the deficiencies on the foreclosure sale; that defendant Bierd, who held the order so accepted by plaintiff, was next entitled to the amount thereof with interest, and that plaintiff was entitled to the residue to be applied upon the advances made by him.

*F. P. Bellamy* for appellants. Upon the defendants' abandonment of the building contract, plaintiff could elect to sue for damages for breach of contract or specific performance, to recover on the contract his unpaid advances then due, or he could

rescind and in an action for money had and received, recover what he had paid on the faith of the contract. (11 Paige, 427; 57 N. Y. 217; 4 Johns. Ch. 334; *Day* v. *N. Y. C. R. R. Co.*, 53 Barb. 253; *Raymond* v. *Bernard*, 12 Johns. 275.) Each of these actions is a personal one, and plaintiff is bound by his election and must stand by it. (*Day* v. *N. Y. C. R. R. Co.*, 53 Barb. 253–5; *Dubois* v. *D. & H. C. Co.*, 4 Wend. 285; *Morris* v. *Rexford*, 18 N. Y. 557; 2 Story's Eq. Jur., § 750.) The measure of damages would not exceed the cost of completing, which would put the plaintiff in exactly the same condition as if the contract had been fulfilled. (*Morrill* v. *Irving F. Ins. Co.*, 33 N. Y. 439; *Beal* v. *Home F. Ins. Co.*, 36 id. 522; *Devlin* v. *The Mayor, etc.*, 63 id. 25; *Masterton* v. *Mayor, etc., Brooklyn*, 7 Hill, 74; *Cassidy* v. *Le Fevre*, 45 N. Y. 567; *Griffin* v. *Colyer*, 16 id. 493–5; *Freeman* v. *Clute*, 3 Barb. 427.) Plaintiff's acts rendered a performance of either building contract or trust fund collateral agreement, impossible, and constituted an absolute rescission of both contracts by mutual consent. (*Dubois* v. *D. & H. C. Co.*, 4 Wend. 285; *Raymond* v. *Bernard*, 12 Johns. 275; *Terwilliger* v. *Knapp*, 2 E. D. Smith, 86; *Coon* v. *Reed*, 1 Hilton, 512; *Mallory* v. *Lord*, 29 Barb. 454; *Davis* v. *Associates of N. J.*, 6 Hun, 474; *Gallagher* v. *Nichols*, 60 N. Y. 448; *Meyer* v. *Hallock*, 2 Rob. 288; *Morris* v. *Rexford*, 18 N. Y. 557; *Lawrence* v. *Taylor*, 5 Hill, 107; *Schofield* v. *McGregor*, 1 T. & C. 404; *Utter* v. *Stuart*, 30 Barb. 20; *Weaver* v. *Bentley*, 1 Cai. 47; *Sturtevant* v. *Orser*, 24 N. Y. 538; *Fullager* v. *Reville*, 3 Hun, 600; *Day* v. *N. Y. C. R. R. Co.*, 53 Barb. 250; *Mason* v. *Boret*, 1 Den. 69; *Goss* v. *Mather*, 2 Lans. 286.) The sale at auction has fixed the liabilities of the parties so far as value is concerned, and estimated value is utterly immaterial. (20 N. Y. 499; 42 id. 40; 2 Keyes, 649.)

*Thomas J. Tilney* for respondent. There was no rescission by plaintiff of either the original contract or the trust fund agreement. (*Meyer* v. *Hallock*, 2 Rob. 284.)

FOLGER, Ch. J. We think that the building contract and the agreement as to the trust fund are, by the acts of the parties, to be read as one contract. Then, as far as involved in this case, it was a contract by the McCormicks, to take a deed of the premises, to give back mortgages to the plaintiff, to build four houses on the lots, and to leave $3,000 on deposit at the trust company as a collateral security for the performance by them of the contract. The plaintiff agreed that his mortgages should be next in lien after the Grannis mortgage, and that he would make some advances. He has kept his agreement. The McCormicks have not completed the houses, and have failed to perform their agreement. The plaintiff has a right to resort to his collateral security, the fund; and the question is, how much of it is he entitled to, as against the McCormicks? Clearly he is entitled to have from the McCormicks as much as will put him in as good plight as he would have been had the houses been finished. His damages are the difference in the value of the premises, as they were with the houses unfinished, on the 1st September, 1877, from what the value of them would have been, had the houses been finished on that day according to the contract. *Laraway* v. *Perkins* (10 N. Y. 371) was the case of a covenant by the defendant to build a house, and by the plaintiff to convey a house and lot in payment therefor. On the trial, the plaintiff was allowed to give evidence of the difference in value between the house and lot that he was to convey, and the house to be built by the defendant. It was objected that the difference in value was not a proper measure of damages. The evidence was received under exception, and the ruling was upheld in this court. Two opinions were given in this court. They are not put in the same form, but they reach the same result. GARDINER, J., said: " The difference in value between the house and the land was the natural and necessary measure of damages." JOHNSON, J., said: " The measure of damages would be what it would be worth to build such a house. * * * It is the common case of work contracted to be done, materials to be furnished, goods to be delivered, in all which the damages are measured by ascertaining what it would have

been worth to perform." What the specific evidence given was, does not appear from the case as reported, nor from the Court of Appeals cases, bound and filed in the State Library: Vol. 35, B. No. 23. *Morrell* v. *Irving Fire Ins. Co.* (33 N. Y..429) was a case of a building insured by defendant and burned. The defendant chose under a condition in the policy to rebuild. The court held that the policy thereby became as if a building contract. The defendant failed to complete the building. The rule of damages was laid down, as the difference in value between the building as it existed on the day it was destroyed by fire, and the building that the defendant finished and delivered over to the plaintiff (see p. 439); and that the inquiry would be, has the defendant replaced the article or rebuilt the building as agreed (see p. 453); though elsewhere in the same case it is said that the rule is: "What will it cost to procure a full completion of the contract, including, if the case calls for it, any special loss by reason of delays, etc." (see p. 447). There are analogous cases that tend to the same end. Thus, on a covenant to teach a slave a trade, the measure of damages is the additional value of the slave if taught. (*Bell* v. *Walker*, 5 Jones' Law [N. C.], 43.) A covenant to keep, or put premises in repair, seems to be an analogous case. But here the decisions do not agree. Sometimes it has been held that the measure is what it will cost to put in repair. (*Vivian* v. *Champion*, 2 Lord Raymond, 1125; *Yates* v. *Dunster*, 24 Law J. [Eng.] 226.) Other times it has been said or intimated, that the measure would be what the landlord would lose, if he put his reversion in market and sold it; in other words, the difference between what it was worth with the premises out of repair, and what it would have been with them in repair. (*Smith* v. *Peat*, 9 Exch. 161; *Luxmore* v. *Robson*, 1 B. & Ald. 584.) So it is stated, as a general principle, that where one is to receive property, then the value of the property is the measure of damages, because that is the remuneration fixed by the contract; and the principle was applied, by holding that if one agreed to build a house and give a lease of it, the value of the lease is the measure of damages for non-performance; as the consideration was the delivery of a thing

of ascertained or ascertainable value. (*Strutt* v. *Farlar*, 16
M. & W. 249.)   So, on covenant to renew a lease, the value of
the thing lost by non-performance is the measure of damages
thereby. (*Robinson* v. *Harman*, 1 Exch. 850; *Evelyn and
wife* v. *Raddish*, Holt, 543; see 7 Taunt. 410; *Tracy* v.
*Albany Exch. Co.*, 7 N. Y. 472; *Holliday* v. *Marshall*, 7 Johns.
211.)   I am aware that there has not been harmony in the
expressions of learned judges, in passing upon the question of
the measure of damages.   I apprehend, however, that it has
been principally in pointing out the kind of testimony by which
the amount of damages was to be got at, rather than in the
rule that was to govern.   Stated in its broadest form, the
plaintiff is to have that compensation, which will leave him as
well off as he would have been had the contract been fully
performed.   With more particularity, he has a right to a house
as good as that which the defendants agreed to furnish; and
his damages is the difference between the value of the house
furnished and the house as it ought to have been furnished.
One kind of testimony by which that difference may be made
known, is that of experts, saying what would have been the value
of the one, and what is the value of the other.   Another kind of
testimony is that of experts, what it would cost to complete
the unfinished house up to the mark of the contract.   Another
kind is, when the house has been in fact finished, up to that
mark, what it did in fact cost to finish it.   But these ways
all lead to the same end; what is the difference in value be-
tween the unfinished house and a house had it been finished
as agreed upon.   And this is to be observed of the last-named
kind of testimony; *first*, that the plaintiff is not under obli-
gation to go on and finish the house; *second*, that he cannot
always finish it, as he could not in the case in hand, at the day
called for by the contract, when there will come into the dam-
ages the element spoken of by MARVIN, J., in 33 N. Y. (*supra*)
of loss from delays; and *third*, that the cost of actual building
may have increased after the day of performance, and so be a
detrimental gauge of damage for the defaulting contractor.
Yet the referee received testimony in each of these ways, and
therefrom reached a result, by the application to the facts thus

before him of the rule we have above stated.　We think that he made no error.

The plaintiff was entitled on the 1st of September, 1877, that there should be finished houses, rentable, and so, productive of income with which to keep down interest on the mortgages on the lots, the taxes thereon, and insurance premiums.　He could not, on that day, had he been let into immediate possession and control, by any expenditure of money or energy, have completed them at once; nor, in the nature of things, could he have supplied the lack of the completed houses by a purchase in the market.　The work needed to complete was one of time; and while the time was running, interest was running also, taxes were levied, insurance was to be kept up, and the premises were yielding no rent.　It is plain that to repay him just what he expended to finish the buildings would not make him whole; for he had to pay, besides the cost of building, interest to Granniss, and lose interest on his own mortgages, and pay taxes and premiums.　To put him in as good predicament as he would have been had the buildings been done on the 1st of September, 1877, he should have the difference in value between the buildings thrown on his hands unfinished, and the houses as they would have been if completed according to the contract.　This seems to us the rule that will give him full compensation.

The appellants claim that the trust fund was not a collateral to the plaintiff's mortgages.　It is true that it was not made so in direct terms, but it was collateral that the houses would be built; and as that could not be without helping the security of the plaintiff's mortgages indirectly, the trust fund operated as collateral to the mortgages.　The plaintiff gave up his right to have no greater incumbrance on the lots, before his own, than to an amount named.　He permitted a larger amount to precede him, but he did so on the consideration that $3,000 should be kept on deposit as a security that the houses be built, and to be paid to him when they were finished.　He was, to be sure, to make advances for the building, but those advances expended on the premises made his mortgage security more valuable; and when the $3,000 would be paid

him he would reimburse himself; which makes his conduct wise and consistent in applying the first $3,000 to liquidate former advances.

We see no question of election of remedies in the case, as that question is presented by the appellants. The plaintiff had a right to enforce every agreement that he held according to its terms. His bonds he could sue and get personal judgments. His mortgages he could foreclose, if executions on those judgments were not satisfied. His claim upon the deposit he could enforce, as that deposit, in effect, stood for so much mortgage security that he had given up to Grannis for the appellants' benefit. And here is the essence of this arrangement for the deposit. The plaintiff relinquishes so much of his mortgage security, on $3,000 being put aside in place of it, for him ultimately. It mattered not to him that he made advances to the McCormicks, if the money was laid out on the lots. It was returned to him in enhancement of his mortgage value, and he would obtain repayment from the $3,000 at the end.

Nor is there room for a question of the rescission of the building contract by the plaintiff. The defendants abandoned the contract. It was the duty and the interest of the plaintiff to mitigate the damages therefrom as much as he could. To that end he took possession of the work and finished it to availability. His act in foreclosing the mortgages was justifiable. There had been a default. He need not in his action therefor, and in the judgment, reserve the building contract; the defendants had abandoned it, and it would have been a useless form to have done so.

Nor is the point tenable that the plaintiff cannot recover for expenditures made after his foreclosure sale, for that it was made on his own land. Expenditure needful to bring up the value of the buildings is part of the damage he had sustained, before the foreclosure, by the failure of the defendants to add so much to the value of the land as they agreed to do.

The judgment should be affirmed.

All concur.

Judgment affirmed.