## MORRELL *v.* LONG ISLAND R. CO.

*(City Court of New York, General Term.   May 28, 1888.)*

1. RAILROAD COMPANIES—AGREEMENT TO BUILD EMBANKMENT—MEASURE OF DAMAGES
    FOR BREACH.
       Defendant agreed to fill its trestle-work to protect plaintiff's adjoining land from
    overflow, and to construct a depot site partly on plaintiff's land, if he would furnish
    the sand and gravel near by.   Defendant used the earth furnished in another place.
    The embankment, as partly constructed by defendant, with ashes and cinders, was
    useless as a protection to plaintiff's premises.   Defendant failed to construct the
    depot site as agreed.   *Held*, that plaintiff's measure of damages was the fair cost
    of constructing with sand and gravel the embankment and depot site in the locality
    and manner agreed.
2. CONTRACTS — ACTIONS ON — EXISTENCE OF ORAL CONTRACT A QUESTION FOR THE
    JURY.
       In an action on an alleged oral contract, where the evidence is conflicting, it is
    for the jury to determine whether there was such a contract.
3. CORPORATIONS—CONTRACTS WITH AGENTS OF—ESTOPPEL TO DENY.
       Where the president and vice-president of a corporation instruct a person to deal
    with the superintendent, and the corporation receive the benefit of an oral agree-
    ment made by him for the corporation, it cannot deny his authority to act.
4. APPEAL—REVIEW—OBJECTIONS NOT RAISED BELOW.
       A general objection to the right of plaintiff to a verdict does not raise the ques-
    tion, on appeal, of its correct amount.

Appeal from trial term.

Action by William H. Morrell against the Long Island Railroad Company
for breach of an oral contract.   Defendants appeal from a judgment for
plaintiff and from an order denying a motion for a new trial.

Argued before NEHRBAS, McGOWN, and PITSHKE, JJ.

*Edward E. Sprague* and *Hinsdale & Sprague*, for appellant.   *F. E.
Blackwell*, for respondent.

PITSHKE, J.   The court below submitted to the jury the entire question
whether the contract was made between the parties as alleged, and the jury
found for the plaintiff.   That matter was properly left to the jury to decide
and determine.   *Patten* v. *Pancoast*, 25 N. E. Rep. 893.   Upon the question
of damages the court instructed the jury, under exception, that, as damages
for defendant's failure to complete the filling in of the trestle, they might
consider what it would cost plaintiff to build an embankment along the line
of the railroad sufficient to keep the water from flowing in upon his land,
and that, as damages for defendant's failure to construct a depot site, plain-
tiff might recover the value of the earth necessary for that purpose, and cost
of carting it.   The rule of damages laid down by the court was the only part
of the charge excepted to.   The final and conclusive finding of the jury being
that the contract was unfulfilled, plaintiff was entitled to be compensated to
such extent as to enable him to be put in the like position he would have been
in had the contract been duly performed.   He should have just indemnity
for his resulting loss, (*Baker* v. *Drake*, 53 N. Y. 211, 216;) that is to say,
"the plaintiff is to have that compensation which will leave him as well off
as he would have been had the contract been fully performed," (per FOLGER,
J., *Kidd* v. *McCormick*, 83 N. Y. 397;) and "he should, so far as money can
do it, be placed in the same situation with respect to damages as if the
contract had been performed," (*Robinson* v. *Harman*, 1 Exch. 855.)   The
right of recovery on part of the plaintiff, as contractee, extended, in short,
to all damages flowing naturally and proximately from the breach, (*Tuers* v.
*Tuers*, 100 N. Y. 200, 2 N. E. Rep. 922,) though other causes, thereby set
in motion, and not otherwise producing such a result, have contributed to the
injurious consequences, (*Pollett* v. *Long*, 56 N. Y. 200.)   The court below
left it to the jury, as a question of fact, whether there was a contract entered
into with reference to filling in an embankment along the railroad contiguous

to plaintiff's salt meadow, and further filling for a depot site there, or for either of such purposes; and if satisfied, by a preponderance of testimony, of the existence of the contract as stated by plaintiff, they were to consider and determine whether or not there was a performance, and how far. The whole matter was, hence, submitted properly and completely to the jury for final determination.

There was clear evidence, and the jury have found that the plaintiff, as owner of the adjoining property, desired to prevent the flowing over of water from one side of said railroad to the other, and upon his lands; and, applying to the railroad to do the filling, he elsewhere, at the superintendent's instance, procured the required earth for defendant, provided it was used for the aforesaid purposes of filling in the trestle-work and filling up a depot site, by placing such earth thus furnished at the points designated. Instead of doing this, the defendant took the earth, and used it at some other place on its road, putting only porous cinders and like indifferent material into the trestle-work along plaintiff's premises, and never even attempting to fill up any depot site; and, that being the case, the plaintiff evidently derived no benefit therefrom or from the agreement found by the jury. The company, on the trial, denied the condition of affairs as above depicted, claiming it had a prior and paramount arrangement for the same earth with the owner thereof for using it for railroad purposes anywhere on its road; but the jury, to whom this matter was also specifically submitted with proper instructions to render a verdict for defendant if they believed this version, have found to the contrary, and in plaintiff's favor, thereon. There was more than sufficient earth provided by plaintiff to make that depot site and fill in the trestle-work fully. The depot site would have been alongside the filling in the trestle; that is, partly on defendant's roadway and partly upon plaintiff's ground contiguous thereto. Both localities could easily have been filled in with the sand and gravel supplied by plaintiff in a manner as contracted for. The objection to the cinders and ashes deposited (in lieu of said sand and gravel) in the trestle, was that the water leaked through, and such filling was therefore utterly useless to plaintiff. Sand and gravel, however, would answer the purpose, and the place whence plaintiff was to procure the filling earth was the place from which the defendant obtained the sand and gravel. Testimony was properly admitted regarding the cheapest cost of carting sand and gravel and filling in said trestle-work, and making the depot site therewith, as agreed, from the nearest point where sand and gravel can be obtained, and the lowest price of sand and gravel at such point nearest to the locality. This would constitute the measure of plaintiff's damages, recoverable for defendant's breach of the contract averred by plaintiff. That is, it would be the fair price or cost of what he (plaintiff) was to get by the contract, the existing embankment of ashes and cinders being worthless to him. *Laraway* v. *Perkins*, 10 N. Y. 371, 373. In other words, it is the price for which the transporting and placing the requisite earth by others on the locality, and in the manner as agreed might have been obtained, the company's contract price to so carry the earth there being "nothing," *i. e.*, in consideration of its thereby obtaining ground, without payment, for a solid railroad embankment. To that effect: *Ogden* v. *Marshall*, 8 N. Y. 340.

The jury's verdict was entirely reasonable, under the evidence. Its amount is not to be questioned on this appeal, as the defendant objected below only generally to the right of plaintiff to have a verdict at all, and wholly failed to raise the specific question of its correct amount. *Tuers* v. *Tuers*, 100 N. Y. 202, 2 N. E. Rep. 922. The verdict is amply sustained by the evidence adduced. There was sufficient authority shown to make the said contract binding on defendant. The plaintiff first applied, in relation to the subject, to the company's president, at its offices, who referred and sent him to the vice-president; and the latter instructed him to deal with the superintendent, Mr

Barton. The president (or vice-president for him) had presumably proper authority to make such filling-in agreements, and instruct Barton accordingly, even for depot sites.   As the defendant took away all the earth obtainable under the contract, by thus taking the benefit of plaintiff's contract with Bogert, and using the sand and gravel procured by plaintiff for his contract with defendant's officers, the defendant has adopted and is estopped from denying the action of the general superintendent on behalf of the company; which latter is therefore thereby bound to the contract by him entered into.   *Wild* v. *Mining Co.*, 59 N. Y. 644.

The other exceptions taken by the defendant during the trial are without merit, respectively.   The order and judgment appealed from must be affirmed, with costs.

NEHRBAS and McGOWN, JJ., concurred.