### WALDEN v. ELDRED.

(*Supreme Court, General Term, Third Department.* November 26, 1890.)

ASSUMPSIT—SPECIAL CONTRACT—QUANTUM MERUIT. ;

> The evidence relied on to establish a special contract by P. to erect an hotel for defendant was that of a witness who testified that, about the time P. commenced work, witness heard him say to defendant that he was going to build him an hotel upon the same plan, but larger than one P. had previously built for defendant, and that shortly before P. quit work he told defendant, in the presence of witness, that he had received more money then he thought he had, and would not ask any more until the contract was done. The receipts for the advances to P. all acknowledged the receipt of money to apply "on contract," with one exception, which purported to be for extra work beyond the contract. *Held*, that a finding that there was a special contract would not be disturbed, and that an abandonment of the work by P., without reason, before the contract was completed, was a breach of the contract, which precluded a recovery for any unpaid balance.

Appeal from judgment on report of referee.

Action by George H. Walden against Perry E. Eldred. Defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, J.

*Willis E. Heaton,* for appellant.     *Westfall & Whitcomb,* for respondent.

MAYHAM, J. This is an appeal from a judgment entered upon the report of a referee, in favor of defendant, dismissing plaintiff's complaint, with costs. The action was brought by the plaintiff as assignee of an alleged claim against defendant. The complaint contained two counts, one for balance due on a special contract for building an hotel, by John G. Peters, plaintiff's assignor, for defendant, the other for work, labor, and services, money expended, and material furnished by plaintiff's assignor to and for the defendant, in the construction of an hotel for the defendant at Cambridge, in Washington county, N. Y. The answer denied that the work, labor, and service were performed, or the money paid or materials furnished, under a *quantum meruit,* and alleges that the same was performed and furnished under and upon a special contract, to build and complete the buildings mentioned in the complaint, for a given sum, and at a specified time. At the commencement of the trial, the plaintiff withdrew or waived all claim under the first count in his complaint. On the trial, the chief contention was directed to the question whether the plaintiff's claim arose upon a "*quantum meruit,*" or whether there was a special contract between Peters, the plaintiff's assignor, and the defendant, for the building of this hotel. It is not claimed, nor does the evidence show, that there was any written contract between the parties. To establish the plaintiff's cause of action upon his own theory, a mass of evidence was given, tending to show that in November, 1877, the plaintiff's assignor commenced the construction of a large hotel, stores, and outbuildings on the plat from which the "Union Hotel" of Cam-

bridge had been lately burned, the title to which had been purchased by the defendant, and, on the previous October, Peters, plaintiff's assignor, furnished a large amount of material, and did a large amount of work on this hotel, during the fall of 1877, and the winter and spring of 1878; but, before completing the same on the 3d of June, 1878, quit and abandoned said work, and on that day gave the defendant formal notice, in writing, that he was unable to furnish material, and finish the hotel, and gave his consent that the defendant might finish the same, but stated no reason for his action except inability. The defendant accepted the building, so far as appears, without remonstrance or objection, and proceeded to complete the same. At the time that Peters gave up the building, the defendant had paid him, and assumed his liabilities to the amount of $7,666.81. Evidence was given in detail of the value of many of the materials furnished by Peters, and of the amount and value of the labor performed and furnished, but the method by which, on the trial, the value of the material furnished by him, and the labor performed by him, was by estimating the value of the buildings when completed, from which the defendant's cost of completion was deducted, the balance of which was claimed to represent the amount put in the buildings by Peters, from which, by deducting the amount actually received by him from the defendant, there remained an apparent balance of $3,730.19, which plaintiff claims was due Peters at the time he quit work, and which the plaintiff claims under the assignment to him. Whether this method adopted by the plaintiff to fix the amount, and which was allowed by the referee, was the correct rule for determining the value of Peters' work and materials, it is unnecessary for us to inquire here, as the plaintiff failed to recover before the referee, and no one is in a situation now to complain of such method. If, therefore, this claim arose under a *quantum meruit*, and not a special contract, it would seem that the plaintiff would be entitled to recover in this action.

But it is insisted on the part of the defendant that this work was performed, materials furnished, and money expended under a special contract, under which plaintiff's assignor contracted and agreed to construct and complete on this cite a hotel, larger and better than the one which he had constructed for the defendant in the summer and fall of 1877, at Hoosick, N. Y., for $5,000, and after the same plan, but differing from it in that it did not include barns, but was to be larger, and include stores and rooms over them, for the sum of $7,000. The contract for the construction of the Hoosick Hotel was in writing, but does not appear in this case. There was no written contract for the construction of the Cambridge Hotel, and the only evidence of a contract seems to be that of witness Canwick, who swears to a conversation between Peters and defendant, about the time Peters commenced work on the Cambridge Hotel, and also a conversation between them a short time before Peters quit work on the building, and ten receipts in writing dated at various times between the 8th of December, 1877, and the 24th of May, 1878, signed by John G. Peters, all of which acknowledged the receipt of money to apply on contract of Cambridge Hotel, except one, which purports to be for extra work beyond the contract. It nowhere appears from this evidence what the terms of the contract were, except as it is rather vaguely stated in the conversation sworn to by Canwick. He says that, just before the commencement of the building of this hotel, he heard a conversation between Peters and Eldred. They went into a room together. "I heard the conversation continued after they came out." In answer to a question, the witness said: "When they came out, they were talking about building the hotel at Cambridge. I heard Mr. Peters say he was going to build him a better hotel than there was in Washington county, same plan as that at North Hoosick, and a larger building. Perry said it ought to be a better building, as it cost more money. I asked him how much, and he said $7,000." This witness testifies

to another conversation between Peters and defendant, a short time before Peters quit work, when they looked over their accounts. Defendant told Peters that he had about all he wanted him to have till he got the building done. Peters said he had had more money than he thought he had, and would not ask for any more until the contract was done. This constitutes substantially the entire evidence of the existence of a special contract under which this work was done; but we find no evidence in the case contradicting, or in any way impairing, the force or effect of this proof, and the referee found that there was a special contract, by which Peters was to erect, at Cambridge, an hotel, upon the same general plan as the one previously built by him for defendant, at North Hoosick, under which this work was done, and money and materials furnished, by Peters, and that, before the completion of the building under such contract, Peters abandoned the work, without any reason therefor, as between him and the defendant.

But it is claimed by the appellant that this contract is so indefinite in its terms, if indeed a contract is proved, that it is void for uncertainty. It must be conceded that the proof of the terms of the contract is quite unsatisfactory; but the evidence discloses a model after which this hotel was to be fashioned, except that this was to be larger and better, and it is not the province of the court to make contracts for parties, but to endeavor, when applied to, to enforce such contracts as the parties make, and, if Peters undertook to build such a building as the contract called for, we see no reason why the rules of law, governing the rights of parties in reference to the performance of contracts, should not be applied to him, unless, by some act of the defendant, he has been released or excused from a strict performance. The complaint admits that Peters received, on account of this building of the defendant, the sum of $6,235.40, and that the same was, at the time of the surrender to the defendant, subject to a lien of $1,274.06, making the cost of the building to the defendant, at the time of the surrender to him, $7,509.46, more than $500 in excess of the contract price. But the case shows that, while the work was in progress, the defendant made changes which largely increased the amount of work and expense of materials, which was done and furnished by the plaintiff's assignor, and the plaintiff insists that the changes were so marked and radical as to raise the inference that the contract was, by mutual consent, abandoned, if one ever existed. We think the evidence fails to establish any such abandonment of the contract, and the referee does not find, nor was he requested to find, that the contract was abandoned by mutual consent. The referee finds that the evidence does not disclose, in all instances, what was within, and what was beyond, the contract. Nor does the evidence render it possible to separate the value of the work done by contract, and that which was done without the contract. Had Peters proceeded with the work to completion, his right to recover for the extra work and materials would have been undisputable, provided its value was established by proof, or had he refused to perform extra work, and put his abandonment of the contract upon the ground of its imposition. But the evidence shows that the referee finds that he abandoned the work before the contract was completed, without any reason. This was a breach of the contract on his part, which, under the well-settled rule of law, prevented his recovery for any unpaid balance.

The contract, as found by the referee, and as established, we think, by the proof, was entire, to complete the building. Since the case of *McMillan* v. *Vanderlip*, 12 Johns. 166, the rule seems to be uniform, that in such cases the performance is a condition precedent to a recovery, unless the defendant has done some act on his part to prevent or waive a strict performance. In *Pullman* v. *Corning*, 9 N. Y. 97, which was a contract for the construction of a house, the defense was that the contract was not substantially performed by the plaintiff, and the court says: "Where the contract has not been

substantially performed, the contractor cannot recover." It is true that if the failure is slight, and the contract is substantially performed, the contractor will be entitled to recover, (*Woodworth* v. *Fuller*, 80 N. Y. 312;) and, if the extra work could be separated from the contract, this rule would not prevent a recovery for that, (Id.) But the case at bar is not one of defective performance, but one of failure or refusal to complete the work, and comes more nearly within the rule laid down in *Pullman* v. *Corning, supra,* and *Smith* v. *Brady,* 17 N. Y. 173. But it is further insisted by the learned counsel for the plaintiff that the acceptance of this building by the defendant, without objection, was a waiver of the performance of the contract by the defendant, and made him liable to pay the value of the services and materials already rendered or furnished by the plaintiff's assignor. And upon this subject he cites *Wheeler* v. *Scofield*, 67 N. Y. 314, but we think that case distinguishable from this. In that case, the owner, after the bankruptcy of the contractor, solicited and obtained the permission of the builder that he (the owner) might proceed and complete the building, and the court held that, by thus soliciting and obtaining permission, he had so far waived a strict performance as to enable a material-man, who had a lien, to enforce the same, and that having taken possession by and in pursuance to his own request he could not set up the defense of non-performance to defeat the lien. In the case at bar, the defendant did not solicit the possession or privilege of finishing the building, but adopted the only method left him of availing himself of his property after the builder had abandoned the same. In *Kidd* v. *McCormick*, 83 N. Y. 391, it was held that where the builder, under a contract, abandoned the building before completing the contract the owner might complete the work, and still insist on the terms of the contract. No question is raised on this appeal as to the rulings of the referee in receiving or rejecting evidence on the trial, and we see no error in the disposition of the case by the referee. Judgment affirmed, with costs. All concur.