SARAH KANTER, Respondent, v. NEW AMSTERDAM CASUALTY COMPANY, Appellant.

First Department, April 1, 1921.

**Landlord and tenant — covenant to make alterations — action on bond to secure performance of covenant — defendant estopped from claiming that plaintiff, original lessee, not entitled to recover as if owner — measure of damages is cost of alterations — recovery not limited to amount deposited as general security.**

In an action on a bond given by the defendant to pay a specified amount, on the non-performance of a covenant in a lease binding the tenant to make alterations, it appeared that the plaintiff, who was the original lessee with a long term lease, leased the premises to the defendant's principal for a long term; that the tenant never entered into possession or paid the rent or made the alterations and was duly dispossessed within a short time after the time for delivery of possession, and that after the expiration of the period in the lease for the completion of the alterations this action was commenced.

*Held*, that the defendant was estopped from claiming that the plaintiff's title or right to the use and enjoyment of the premises in question, she being herself a lessee, was not for such a period as would entitle her to recover as if she were the owner;

That no objection having been made that the plaintiff's reversionary interest was not for such a period as to entitle her to recover as if the owner, the true measure of damages as against the tenant would have been the cost of the alterations, and that a recovery against the surety to the amount of the bond, which was less than the cost of alterations, was proper.

The amount of damages that the plaintiff may recover for a violation of the covenant to make alterations to secure the performance of which the bond in suit was given, is not limited to the amount of a deposit made by the tenant under a later clause in the lease which was to be considered as damages for the violation of covenants generally.

MERRELL and PAGE, JJ., dissent, with opinion.

APPEAL by the defendant, New Amsterdam Casualty Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th day of April, 1920, on the decision of the court rendered after a trial at the New York Trial Term, a trial by jury having been waived.

*Frederick Mellor*, for the appellant.

*William Kaufman* of counsel [*Salomon & Plumer*, attorneys], for the respondent.

LAUGHLIN, J.:

It is true, as stated in the opinion of Mr. Justice MERRELL, that the interest of the plaintiff in the premises was not specifically shown on the trial. It appears, however, that on the 7th day of November, 1917, she executed a lease of the premises in writing to The 115th Street Garage Company, Inc., for the term of twenty-one years commencing on the 1st day of January, 1918, at the annual rental of $4,200 payable in equal monthly installments, and that the lease was given on the express condition that the tenant at its own expense should forthwith proceed to make the necessary alterations to change the stable then on the premises into a garage and would complete the same on or before the 1st of June, 1918. It further appears that the lease provided that simultaneously with the execution and delivery thereof the tenant should cause to be executed and delivered to the plaintiff the bond of the defendant containing certain provisions identified by reference to another instrument, and that the bond on which the action is predicated was procured to be executed by the defendant and delivered to the plaintiff pursuant to and in conformity with the obligations of The 115th Street Garage Company, Inc., under the lease. Plaintiff alleged that she held a lease of the premises dated September 9, 1916, and that at all times mentioned in the complaint she was and still is the lessee thereof. These allegations were put in issue by the answer and no proof thereof was given other than such inference as might be warranted from the fact that she made the lease of the premises for twenty-one years. The court found at the request of the defendant that the plaintiff was the lessee of the premises and also found that she was lessee " under a long term lease." No point with respect to plaintiff's title or interest was made on the trial. It appears to have been assumed by the defendant in making the bond that the plaintiff was the owner for it is so recited in the bond. It is now claimed by the appellant that the plaintiff was not the owner but it does not claim that her reversion did not give her the right to the use of the premises for such a period as would authorize a recovery under the rule applicable to an owner. In appellant's first point plaintiff is regarded as the owner and it is argued that her only right as such was to have the alterations made lawfully, if

made at all, but that she exacted no obligation of the tenant to make them. It also claims that the lease made by the plaintiff was canceled by the dispossess proceedings and by the resumption of possession by her in her own right and not as agent of the tenant and that, therefore, she must be deemed to have accepted surrender of the premises and that thereby the defendant's principals were discharged. It is further argued that she was not entitled to possession with the building altered as contemplated until the expiration of the term of twenty-one years and that the damages recoverable by her were limited to the $350 deposited by the tenant as security for the performance of the conditions of the lease. I am of opinion, therefore, that the defendant should now be deemed estopped from questioning plaintiff's title or right to the use or enjoyment of the premises for such a period as would entitle her to recover as if she were the owner. The contention that the damages are limited to the $350 deposited by the tenant is not tenable. The lease executed by the plaintiff to The 115th Street Garage Company, Inc., contains twenty-six paragraphs embodying covenants and agreements on the part of the tenant in addition to the provisions for altering the building and it is provided in paragraph 2 which contains those provisions that the lease is given upon the express condition that the tenant shall make the alterations as therein provided. The provisions with respect to the deposit of $350 by the tenant are contained in paragraph 20 and it is therein recited that $350 has been deposited by the tenant with the landlord " as security for the faithful performance of all the terms, covenants and conditions in the said lease contained," and it is provided that if the tenant surrenders the premises or is dispossessed or defaults or violates any of the terms, covenants or conditions contained in the lease, the amount so deposited shall belong to the landlord as liquidated and stipulated damages and it is provided that the parties have so stipulated for the reason that they cannot ascertain the exact amount of damages which the landlord would sustain in the event of any breach or violation of the lease and that the amount so deposited shall be returned to the tenant with interest at three per cent per annum after the expiration of the lease. If it had been intended that the amount so deposited should be deemed the liquidated damages

for the failure of the tenant to make the alterations it is not probable that paragraph 3 of the lease would have required the giving of a bond to be executed by the defendant in the precise terms of the bond on which the action is brought for that would be wholly inconsistent with the theory that the deposit would constitute liquidated damages for the failure of the tenant to make the alterations.

The plaintiff having exacted as a condition of making the lease that the alterations be commenced forthwith and completed before June 1, 1918, and the lease having been for twenty-one years, it cannot be presumed that the alterations were exacted with a view only to enhancing the plaintiff's reversionary interest at the expiration of the lease, for if that were her primary purpose it would be reasonable to expect that she would have required the making of the alterations toward the close of the term. It must be assumed, therefore, that the primary purpose of this requirement was security for the performance by the lessee of its obligations under the lease, and to protect the plaintiff in case she should exercise her right of re-entry in the event of a breach by the tenant warranting it. (*O'Brien* v. *Illinois Surety Co.*, 203 Fed. Rep. 436; *sub nom. Illinois Surety Co.* v. *O'Brien*, 223 id. 933; *Rock* v. *Monarch Building Co.*, 7 Ohio St. 244; 100 N. E. Rep. 887.) It appears that, subject to the approval of the local authorities referred to in the bond, it was well understood what alterations were to be made, for the tenant in contemplation of the making of the lease on the 17th of October, 1917, entered into an agreement with the Thomas Mulligan Construction Company, Inc., for making them and also filed plans and specifications therefor. The plaintiff showed that the reasonable cost of making the alterations would have been $14,435. During the giving of this testimony, no point was made that the agreement with respect to the alteration was indefinite, or that the plans and specifications therefor had not been agreed upon between the plaintiff and the tenant at or before the making of the lease, or that the said local authorities would not approve said plans and specifications, or that they included any changes or alterations not required under the agreement between the landlord and the tenant, or that plaintiff was not the owner, or that her rever-

sionary interest was not for such a period as to warrant a recovery on the same basis as if she were the owner. If the objections had presented the last ground stated it might have been overcome by other evidence showing the plaintiff's title and interest and that they were such as to entitle her to recover the amount she has recovered. (See *Illinois Surety Co.* v. *O'Brien,* 223 Fed. Rep. 933.) The only objection made to this evidence was that the cost of making the alterations was incompetent, irrelevant and immaterial and not the proper measure of damages for the reason that plaintiff's only right was to accept the surrender or to relet the premises for the account of the tenant and, therefore, those are the only objections presented for review with respect to this item of evidence, which, if in accord with the proper rule of damages, authorized a recovery to the extent of the defendant's obligation under the bond, and that is the amount for which plaintiff has recovered. I am unable to agree either with the view that the plaintiff is not entitled to recover to the extent of the penalty of the bond or that she has failed to show any recoverable damages. The precise terms of the bond were agreed upon by the reference in the lease to a form of bond containing them, and the agreement of the defendant was not to pay the damages to the extent of the penalty of the bond, but to pay a specific amount in the event that the tenant failed to make the alterations as agreed. There is, I think, room for argument that the damages for a breach were stipulated to be the amount specified in the bond. The plaintiff, however, did not rest on this theory, but, as already stated, proved what it would have cost to make the alterations and the objection to that evidence was that it was not the proper measure of damages because she had either to accept the surrender or to relet for the account of the tenant. If the tenant had remained in possession under the lease in force when the action was brought, it could not be said that the plaintiff would be entitled to possession before the expiration of the term, and, therefore, she would have been limited to recovering damages represented by the loss of the alterations as security and for damages to the reversion. (*Illinois Surety Co.* v. *O'Brien, supra; Wentworth* v. *Manhattan Market Co.,* 218 Mass. 61.) Here, however, it appears that the time for delivery of possession was changed

from January 1 to February 1, 1918, and that the tenant failed to enter into possession and to pay the rent and was duly dispossessed therefor pursuant to the provisions of the lease after March first, and that after the expiration of the period specified in the lease for the completion of the building, this action was brought. Therefore, the rights of the tenant had terminated and the landlord had come into the reversion prior to the commencement of the action. If the tenant had performed the agreement, for the performance of which the bond was given, the landlord would then have come into the possession of the altered building, but of that right she was deprived by the breach of the agreement on the part of the tenant. In such circumstances, no objection having been made that the plaintiff's reversionary interest was not for such a period as to entitle her to recover as if the owner, I am of opinion that the true measure of damages as against the tenant would have been the cost of making alterations. That is the rule with respect to covenants to keep premises in repair when the question arises after the landlord has regained possession of the reversion (*Appleton* v. *Marx*, 191 N. Y. 81) and is, in effect, the rule where a grantor takes back a purchase-money mortgage containing provisions for a building loan to be made by him to the grantee for the erection of buildings on the premises which the grantee commences but fails to complete, provided the grantor waives the loss of rental in the interim; but if he wishes to recover that also, it seems the rule to be followed, which would embrace all his damages, is the difference between the value of the premises and their value if the buildings had been completed. (*Kidd* v. *McCormick*, 83 N. Y. 391, and decisions therein cited.) In *Kidd* v. *McCormick* (*supra*) the court held that the case under review was analogous to a covenant to keep or put premises in repair; and in the later case of *Appleton* v. *Marx* (*supra*) it was pointedly held that the measure of damages applicable to such covenants after the landlord has come into the reversion is the cost of making the repairs. The damages, of course, accrued when the breach took place and it is not material whether the landlord or any one else thereafter made the alterations or used the premises without so doing. (*Appleton* v. *Marx, supra; Kidd* v. *McCormick, supra,* 397.)

I am of opinion, therefore, that the recovery was right and should be sustained and that the judgment should be affirmed, with costs.

CLARKE, P. J., and SMITH, J., concur; PAGE and MERRELL, JJ., dissent.

MERRELL, J. (dissenting):

The action is brought to recover the sum of $4,000, being the amount set forth in a bond given by the Thomas Mulligan Construction Company, Inc., and The 115th Street Garage Company, Inc., as principals, and the defendant, as surety. It is claimed by the plaintiff that the bond was given entirely for her benefit, and was to secure the faithful performance on the part of the principals of an agreement to reconstruct into a garage a building then standing upon the demised premises and used as a stable. Plaintiff claims that she is a lessee of the premises and sublet them to The 115th Street Garage Company, Inc., under a lease containing a covenant on the part of the lessee to alter the building thereon into a garage.

On the part of the defendant, appellant, it is claimed that the defendant in executing the bond incurred no liability, except under the clause therein contained in which the principal agreed " to satisfy the owner " that the garage when built should comply with the rules and regulations of the fire, building and other city and State departments.

The learned trial court has found that the premises in question were " held by the plaintiff as lessee under a long term lease. * * * That the alteration of the stable into a garage was for the benefit of the plaintiff. * * * That the cost of said alteration is a sum in excess of Four Thousand ($4,000.00) Dollars." The court then directed judgment in favor of the plaintiff for the sum of $4,000, and costs. I do not think that the findings support the judgment, nor do I think that the evidence supports the findings.

The complaint alleges that the plaintiff was a lessee " holding a lease on said premises dated 9 day of September, 1916." The answer puts in issue said allegation and upon the trial the lease under which plaintiff held was not introduced in evidence and no testimony was offered with reference to

plaintiff's tenure. The complaint further alleges that on the 7th day of November, 1917, the plaintiff entered into a lease with The 115th Street Garage Company, Inc., for said premises on East One Hundred and Fifteenth street for the term of twenty-one years, commencing on the 1st day of January, 1918, at a rental of $4,200 per year, payable in equal monthly installments of $350, in advance; that said premises were to be used for a garage and for the sale of automobiles, automobile supplies and accessories; that in said lease the lessee agreed, at its own cost and expense, to make the necessary alterations and changes in said premises to permit the same to be so used as a garage instead of a stable; that such repairs and alterations were to be completed on or before the 1st day of June, 1918; that such garage was to be in strict compliance with the laws governing the same in any and all departments of the city and State of New York; that it was further agreed between the parties that the tenant should, simultaneously with the execution of the lease, deliver to the plaintiff the bond sued upon; that the bond in question was executed on the 9th day of November, 1917; that thereafter the plaintiff vacated the premises and leased other premises for the purpose of conducting therein her stable business; that the lessee refused, failed and neglected to take and occupy the demised premises and made no alterations. The complaint then alleges that due notice of default was served upon the parties, as required in the lease. The complaint then alleges:

" *Fifteenth.* That by reason of the aforesaid, the plaintiff was compelled to and did vacate premises hereinbefore leased and was compelled to and did lease other premises for the conducting of her stable business and plaintiff did otherwise suffer damages amounting to Four thousand ($4000.00) dollars."

No claim is made by the plaintiff that the parties agreed upon any forfeiture respecting any sum mentioned in the bond or that the defendant is liable to the plaintiff on any theory of liquidated damages. The complaint is drawn and the action was tried on the theory that the plaintiff has suffered damages by reason of the alleged default of the parties in failing to alter the demised premises into a garage.

Upon the trial the defendant conceded the making of the lease, the giving of the bond, the fact that no work was ever done on the plaintiff's premises, and that the plaintiff instituted summary proceedings to evict the tenant, in which proceedings the tenant defaulted. The defendant sought to prove upon the trial that the parties had voluntarily consented to the termination of the lease. The trial court held adversely to the defendant's contention in that respect, and the appellant does not question the decision of the court upon this point.

In addition to the question raised by the appellant as to the construction of the bond, it further contends that the dispossess proceedings and the occupancy of the premises by the plaintiff canceled all obligations of the defendant under the bond; that under the express terms of the lease the parties stipulated that in case of default on the part of the lessee the sum of $350 was fixed as liquidated damages, and that no damages were proven.

The plaintiff did not offer in evidence the lease under which she held the premises, nor did she make any proof respecting her title. There is no evidence in the case to show whether the plaintiff had a lease for one year or for one hundred years, or at all. There is, therefore, no basis for an award of damages. The only evidence of damages offered by plaintiff was the testimony of one Nathan Langel, an architect. He was shown the proposed plans and specifications for the alterations which were to be made to the demised premises, and testified, under defendant's objection and exception, that the cost of such alterations would be $14,435 without an elevator. It was disclosed that the proposed plans had never been accepted by the proper city authorities. There is no evidence in the case bearing upon the value of plaintiff's reversion, the value of the premises, or what effect the alterations would have had upon the rentals. It is, therefore, clear that the judgment appealed from is unsustained by the evidence and should be reversed.

It is, however, proper to dispose of the other questions raised by the appellant, the most important of which is the appellant's liability under the aforesaid bond. The important portions of the bond are as follows:

" *Know all men by these presents,* That Thomas Mulligan

Construction Co., Inc., and The 115th Street Garage Company of New York City (hereinafter called the ' Principal '), and the New Amsterdam Casualty Company, a corporation of the State of New York (hereinafter called the ' Surety '), are held and firmly bound unto Sarah Kanter of 1811 Lexington Avenue, New York City (hereinafter called the ' Owner ') in the full and just sum of Four Thousand ($4000.00) Dollars, to the payment of which said sum of money, the said Principal and the said Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

" Signed, sealed and dated this 9th day of November, A. D. 1917;

" WHEREAS, said Principal Thomas Mulligan Construction Company, Inc., above mentioned has entered into an agreement with the said The 115th Street Garage Co. above mentioned for the alteration of a stable owned by Sarah Kanter, aforementioned, located at #307–11 East 115th Street, into a Garage according to plans and specifications and in accordance with the rules and regulations of the Fire and Building departments of the City .of New York, and has agreed to satisfy the owner of the property, Sarah Kanter, that all work done thereunder will be in accordance with said rules and regulations of the Fire and Building Departments,

" *Now, therefore,* the condition of this obligation is such that if the said Principal shall faithfully perform said contract on his part, according to the terms, covenants and conditions thereof (except as hereinafter provided), then this obligation shall be void, otherwise to remain in full force and effect; "

As above stated, the appellant contends that it is surety only for the faithful performance on the part of the " principal " of the agreement that " all work done thereunder will be in accordance with said rules and regulations of the Fire and Building Departments." The complaint states and the lease shows that prior to the execution thereof the lessee had agreed to give the bond sued upon. A copy of this bond was placed in the hands of the lessor's attorney prior to the execution of the lease, as stated in the body of the lease itself. The

lease bears date on November seventh and the bond on November ninth, but it is quite obvious that one of the considerations of the lease was the giving of the bond for the faithful performance on the part of the lessee of its agreement to alter the demised premises in accordance with certain plans and specifications agreed upon. It, therefore, follows that when the parties agreed in the lease that the sum of $350 was to be taken as liquidated damages in the event of certain defaults on the part of the lessee, they did not contemplate that such sum was to be accepted in case of default under the provisions for alterations. If such were the case the liability under the bond would in no event be over $350, which is contrary to all of the acts of the parties and contrary to the fair interpretation of the lease and of the bond itself. Assuming, therefore, for the reasons above stated, that the defendant contracted to become liable as surety to some one in the sum of $4,000 in case of default as provided in the bond, it is necessary to carefully read the bond itself for the purpose of determining just what the defendant's liability is. At the outset it will be noted that the Thomas Mulligan Construction Company, Inc., and The 115th Street Garage Company, Inc., of New York were designated in the bond to be the " principal " and the New Amsterdam Casualty Company was named as the " surety," and that as such they jointly and severally became bound " unto Sarah Kanter " in the sum of $4,000. The parties did not assume liability to any one else except the plaintiff, Sarah Kanter; and the surety company cannot be sued by either the Thomas Mulligan Construction Company, Inc., or by The 115th Street Garage Company, Inc., under the terms of the bond. It is, therefore, apparent that the things mentioned in the body of the bond were to be done and performed for the benefit of Sarah Kanter. While the bond itself is in the form of the usual contractor's bond, such fact does not alter the liability of the defendant to the plaintiff.

In the bond the parties referred to certain plans and specifications for the alteration of a stable " owned by Sarah Kanter," and further provided that " if the said Principal shall faithfully perform said contract on his (sic) part according to the terms, covenants and conditions thereof * * *, then this obligation shall be void." It is obvious that the word

" principal " means both the Thomas Mulligan Construction
Company, Inc., and The 115th Street Garage Company, Inc.,
and that the contract clearly refers to the agreement on the
part of the lessee to alter the stable in accordance with the
plans and specifications, which work was to be done by the
other principal, the Thomas Mulligan Construction Company,
Inc. The evidence shows that Thomas Mulligan was the
head of both of the principals, and that the stock of both com-
panies was held by said Thomas Mulligan and his sons.

It seems to me that the obligation of the bond was
threefold: (1) " for the alteration of a stable owned by
Sarah Kanter, aforementioned, located at #307–11 East 115th
Street, into a garage according to plans and specifications;"
(2) " in accordance with the rules and regulations of the
Fire and Building departments of the City of New York,"
and (3) " to satisfy the owner of the property, Sarah Kanter,
that all work done thereunder will be in accordance with said
rules and regulations of the Fire and Building Departments."

It seems very clear that upon default of the principals
in respect of any of the acts above mentioned the defendant
was obligated to respond in damages to the plaintiff and that
this court should hold that the defendant is liable to the
plaintiff in such damages as the plaintiff is able to show were
suffered by reason of the failure of the principal to make
the alterations agreed upon in the lease and the aforesaid
plans and specifications.

The appellant asserts, as above stated, that it is not liable
under the bond because the lease was canceled either by
the dispossess proceedings or by the acceptance of the sur-
render of the premises and the occupancy thereof by the
plaintiff. It was admitted at the opening of the case by
defendant's counsel that " the tenant went into possession
on February first." It appears, however, that the actual
possession was postponed by agreement between the parties
until March first. After that date summary proceedings
were instituted to evict the tenant who had never actually
taken possession. No warrant, however was issued, although
the tenant made default and the plaintiff thereafter moved
back into the demised premises. While the plaintiff was
clearly authorized to retain the $350 paid in advance under

the lease, neither the dispossess proceedings nor taking possession of the premises by the plaintiff released the lessee and the defendant from their obligations under the aforesaid bond. As above noted, it was clearly the intention of the parties to make a separate agreement to insure the proper alteration of the premises, and the bond sued upon was given for this particular purpose. The defendant cannot escape liability under the bond by simply proving a general default on the part of its principal which rendered summary proceedings necessary, nor are the plaintiff's damages confined to the $350 stipulated in the lease. If the plaintiff can prove that she holds the demised premises under a long term lease, and that the alterations to the premises which the lessee agreed to make would have benefited the premises and increased the value of plaintiff's security or reversion, it is clear that the plaintiff is entitled to recover substantial damages. The alterations provided for in the lease are much more than ordinary repairs. The lessee agreed to alter the premises from a stable into a garage. It does not necessarily follow, however, that such alterations would increase the market value of the premises as a whole or the rental value thereof. It does not appear that at the time the lease was made the premises were in any respect out of repair or that any part or portion of the alleged improvements and alterations which the sublessee agreed to make were in the nature of repairs. Assuming, however, that the plaintiff will be able to prove that the alterations were for her benefit and increased the value of the premises and also the value of her leasehold estate, the measure of damages is not the actual cost of making these material alterations and improvements, but the true measure of damages is the difference between the value of the plaintiff's leasehold estate and what the value thereof would have been at the time of the breach had the lessee made the alterations and improvements agreed upon. There is a great conflict in the authorities respecting the true measure of damages in this and similar cases. When an action is brought for the breach of a covenant on the part of a lessee to make ordinary repairs and such action is brought before the expiration of the term, it is now settled that the measure of damages is the injury done to the reversion. (*Appleton* v. *Marx*, 191

N. Y. 81.)   When, however, such an action is brought by the landlord after the expiration of the term, the measure of damages is the cost of putting the premises in repair.   (*Appleton* v. *Marx, supra; Lehmaier* v. *Jones*, 100 App. Div. 495; *City of New York* v. *McCarthy*, 171 id. 561; 2 McAdam Landl. & Ten. [4th ed.] 1326; 16 L. R. A. [N. S.] 212, n.; 16 R. C. L. 1094, ¶ 612.)   The above cases, however, were decided upon the theory that the repairs which the tenant agreed to make were necessary to preserve the property and in most instances the repairs had actually been made by the landlords after default on the part of the tenant.   In the case at bar, the tenant having made immediate default and having failed to actually enter into possession of the premises, it would be unfair to award to the plaintiff, she being now in possession of the premises, the full cost price of the alterations which the lessee had agreed to make under the lease, but which might not have benefited the demised property at all nor increased its market or rental value.   Prior to the decision of *Appleton* v. *Marx* (*supra*) the law in this State seems to have been unsettled respecting the proper measure of damages in an action brought by a landlord upon the default of a tenant to make repairs.   The lease under consideration in the last-mentioned case involved a simple covenant on the part of the lessee to make *repairs*.   It does not follow, therefore, that *Appleton* v. *Marx* is any authority upon the question as to what is the true measure of damages in the case at bar.

In the case of *Kidd* v. *McCormick* (83 N. Y. 391) the plaintiff sought to reach certain trust funds which had been deposited for the security of the plaintiff who had sold certain lots under an agreement that the vendees should build dwellings upon them.   The vendees having defaulted before the dwellings were fully constructed, it was necessary for the court to determine what damages the plaintiff was entitled to receive by reason of the vendees' default.   The opinion of the Court of Appeals was written by Chief Judge FOLGER, and it was held that the plaintiff's damages were " the difference in the value of the premises, as they were with the houses unfinished, on the 1st of September, 1877, from what the value of them

would have been had the houses been finished on that date according to the contract." In his opinion Chief Judge FOLGER reviews the authorities upon the question of damages in such cases and analogous decisions respecting similar defaults by a lessee, and stated: " Sometimes it has been held that the measure is what it will cost to put in repair. [Cases cited.] Other times it has been said or intimated, that the measure would be what the landlord would lose, if he put his reversion in market and·sold it; in other words, the difference between what it was worth with the premises out of repair, and what it would have been with them in repair."

The facts under consideration in *Kidd* v. *McCormick* are quite similar to the facts in the case at bar. The Court of Appeals in deciding *Appleton* v. *Marx* did not in any way overrule *Kidd* v. *McCormick* or similar cases which do not involve the narrow question of *ordinary repairs*. *Kidd* v. *McCormick* is cited with approval in *Comey* v. *United Surety Co.* (217 N. Y. 268). The question involved in *Comey* v. *United Surety Co.* was one growing out of a construction contract and was brought on a surety bond given for its faithful performance on the part of the principal. The principal defaulted and suit was brought against the surety. The court held that the plaintiff had a cause of action to recover damages for the abandonment of the contract, citing *Kidd* v. *McCormick* (*supra*). The court further held that the language of the bond was that of the defendants, and that words of doubtful meaning should be construed in favor of the plaintiff.

In Sutherland on Damages (Vol. 3 [4th ed.], p. 3164) the learned author says: " The measure of damages for failure of a lessee to erect a building upon premises during the term as agreed is such a sum as with legal interest would equal the fair cost of the building at the end of the term." (Citing *Wentworth* v. *Manhattan Market Co.*, 218 Mass. 91.)

While the rule stated by Sutherland has never been authoritatively adopted in this State, it is founded upon good logic, for in no event can a landlord who leases his property to another under a covenant to make improvements or alterations receive any benefit therefrom or enjoyment thereof until after the expiration of the term. For this reason a landlord can-

not claim the right to both the immediate possession of the premises and the full cost of such improvements or alterations. It seems to me that all such damages are clearly included within the rule above stated in this opinion, and that the true amount which a landlord in such event is entitled to recover is the benefit which the repairs or improvements would be to his reversion or interest in the demised premises. In the case at bar the plaintiff intended to part with the possession of her premises for twenty-one years. Outside of the additional security for the rents, she could receive no benefit from the alterations for twenty-one years. It was, therefore, necessary for her to show as a foundation for her claim for damages what her actual interest was in the demised premises and how it was affected by the failure of the lessee to make the alterations which it agreed to make. I am unable to find any case in this State where the rule respecting the measure of damages as laid down in *Appleton* v. *Marx* has been applied to facts similar to those in the case at bar. The law also seems to be unsettled in Massachusetts. One of the leading cases in that State is that of *White* v. *McLaren* (151 Mass. 553). In that case an action was brought under a written agreement made by a firm of builders to do certain work and furnish certain stock and materials in accordance with certain specifications. The builders did not construct the roof of the building in accordance with the agreement. The court said: " In determining such damages, different elements are proper for consideration in different cases, according to the nature of the defect. Sometimes the measure of damages is the necessary cost of making the work according to the specifications. * * * The defect might be of ·such a character as to diminish the value of the house but little, while to make the work conform literally to the contract would involve reconstruction at unreasonable and disproportionate expense. The question ordinarily is, How much less is the building fairly worth than it would have been if the contract had been performed? "

A case very similar to the one at bar is that of *Illinois Surety Co.* v. *O'Brien* (223 Fed. Rep. 933). The plaintiff .in that action held a ground lease for ninety-nine years which had run two years. The premises were sublet for ninety-

seven years with a provision in the lease for the erection of a building during the first year. To secure the performance of such agreement the lessee gave a surety company bond. The building was not erected and the lease was terminated for the default of the lessee. The action was brought against the surety company. The court held that the surety company was liable, and that the lessor's damages were to be measured by the value which the building, if erected, would have been to him as security for the performance of the lessee's covenants contained in the lease. It is quite apparent that had the court permitted the lessor in the above case to recover the cost of the construction of the building which the lessee had agreed to erect there would have been a grave miscarriage of justice. O'Brien, the plaintiff, had agreed to part with the possession of his premises for ninety-seven years in consideration of the agreement of the lessee to pay rent and to construct a building thereon and, therefore, as held by the court, was not entitled to the cost price of the structure. In the case at bar the plaintiff had agreed to part with the possession of her premises for twenty-one years for the same consideration. It, therefore, follows that the true measure of damages is as above stated, viz., the difference between the value of plaintiff's leasehold estate at the time of the breach, and what its value would have been had the alterations been made as agreed by the sublessee.

The judgment appealed from should be reversed and a new trial granted, with costs to appellant to abide event.

PAGE, J., concurs.

Judgment affirmed, with costs.